### HICKSON *v.* BROWN, WEDDINGTON & COMPANY.

1. Upon the trial of a traverse to an attachment issued upon the ground that the defendant was a non-resident of this State, the fact that he, a few months before the attachment was levied, being then engaged as a contractor in constructing a railroad,

v 92-15

offered to buy an interest in a business conducted in this State, saying at the time he liked the firm by whom this business was carried on, was not admissible to show that he " had come to Georgia with the mind of remaining."

2. Although the defendant may have left his former home in South Carolina with the intention never to return, yet, if he had not permanently located in this State, nor declared any purpose so to do except upon the happening of a contingency which in point of fact never happened, he was so far a non-resident as to be liable to attachment on that ground; and the mere fact that in his business as a railroad contractor he had a temporary place of abode at which he might have been found and served with process, does not render the attachment void.

3. The verdict was fully warranted by the evidence; and the defendant having traversed the truth of the affidavit in relation to the ground upon which the attachment issued, and having appeared in person at the trial to maintain his traverse, there was no error, under the provisions of section 3328 of the code, in entering a general judgment upon the verdict rendered against him.

June 26, 1893.

Attachment. Before Judge COBB. City court of Clarke county. September term, 1892.

THOMAS & STRICKLAND, for plaintiff in error.
GEORGE DUDLEY THOMAS, contra.

LUMPKIN, Justice.

1. The plaintiffs below sued out an attachment against the defendant upon the ground that he was a non-resident of this State. He traversed the truth of this ground, and the issue thus made was the only contested question at the trial. The defendant had come from South Carolina to this State, and was engaged as a contractor in constructing a portion of the railroad of the Georgia, Carolina & Northern Railway Company. A few months before the attachment was levied, he had a casual conversation with one J. S. Smith, whose firm was conducting a livery-stable and general mercantile business at Jug Tavern, on the line of this road, in which conversation he " applied to said Smith . . . . to buy an interest in the business of said Smith, stating

that he [defendant] liked that country, and wanted to go into business with a live firm, and that he liked Smith's firm." The defendant offered in evidence the above statement made by himself to Smith, for the purpose of showing that he (defendant) "had come to the State of Georgia with the mind of remaining." The court, on objection by plaintiffs' counsel, rejected this evidence, and in so doing did not, in our opinion, commit any error. In the conversation referred to, defendant did not declare any purpose to locate in this State, nor could any intention to do so be fairly inferred from what he said. It does not appear that he made Smith any distinct offer, or that the subject was seriously discussed between these parties. At the time of this conversation, the defendant was actively engaged in his work as contractor, which doubtless required all of his time, and judging from the conversation itself, and the circumstances under which it was had, the inference could hardly be fairly drawn that the defendant really contemplated going into business with Smith's firm, and consequently what defendant said was scarcely such a declaration of an intention to locate permanently in Georgia as could be received in evidence for the purpose stated. Even if he really entertained the idea of purchasing an interest in the business, this would not show an intention to reside at Jug Tavern. It is quite probable that the remarks of the defendant to Smith were in the nature of mere compliments, and made for the purpose of cultivating friendly relations with the latter. We do not mean to say that *bona fide* declarations of a purpose to locate at a given place are inadmissible to prove an intention to do so. Generally, they would be competent evidence; but in this particular case, and in the light of all the facts shown, we think the conversation between the defendant and Smith was altogether too loose, vague and indefinite to be received for this purpose.

2. The defendant testified that when he took the
railroad contract in Carolina and Georgia, he deter-
mined to leave Carolina and locate in Atlanta, or be-
tween there and Athens, if he succeeded in his contract,
or if he found a good business opening to suit him.   He
did not succeed in the contract, and did not locate in
Atlanta, or elsewhere in this State; and it was not
shown that he ever declared any purpose to do so, other
than as above stated.   Under these circumstances,
neither his conduct nor his declarations were sufficient
to make him a *bona fide* citizen and resident of Georgia;
and even though he may really have intended never to
return to South Carolina, inasmuch as he had not ac-
quired a domicile in Georgia, we entertain no doubt
that he was so far a non-resident as to be liable to at-
tachment on the ground of non-residence.   It is true
that he did have at Athens, near the right of way of
the railway, a tent in which he spent a considerable
portion of his time; and there is no doubt that the
sheriff might easily have found him there and served
him with process; but the mere fact that a non-resident
may be found and served does not prevent a creditor
from exercising his right to sue by attachment.   It is
also true that defendant testified that when he left
South Carolina, he left it for good, and that he came to
Georgia to make it his permanent home, but in the
same connection he admitted that his purpose to do so
was contingent upon the success of his railroad enter-
prise, as above stated.   Other parts of his testimony
show to our minds conclusively that he really had no
fixed or *bona fide* intention of making this State his
home; and under these circumstances there was no
error in charging the jury as follows:   "Even though
defendant left the State of South Carolina with the in-
tention of never returning, and by so doing lost his
citizenship there, and came to Georgia and remained

any length of time, no matter how long, with the purpose of locating upon the happening of some future contingency, which does not happen, he is not a resident of Georgia, but a non-resident; and the attachment can be taken against his property, if he has any in the State, upon the ground that he resides out of the State, although he may be in the State at the time, and doing business in Georgia."

3. The jury properly found against the traverse and in favor of the plaintiffs. The amount and justice of the plaintiffs' demand were in no way contested or denied. On the contrary, the defendant admitted in open court that the plaintiffs' debt was due, correct and unpaid at the time the attachment was sued out. The court rendered a general judgment against the defendant, binding not only the property attached, but all other property of the defendant. General judgments may be rendered in attachment cases when the plaintiff gives notice in writing to the defendant of the pendency of the attachment and the proceedings thereon, as provided by section 3309 of the code; or, when the defendant replevies the property, as provided in section 3319 of the code; or, " when he has appeared and made defence by himself or attorney at law," as provided in section 3328. An examination of all these sections will show that it is the purpose and spirit of the law to allow a general judgment against a defendant in an attachment case when he has notice of the suit and an opportunity to make a defence. In our opinion, the object of the law is accomplished when it appears that the defendant filed a traverse to the ground upon which the attachment issued, and appeared in person at the trial to maintain his traverse. Under these circumstances, his opportunity to defend on the merits was fully as good as if he had received a written notice of the pendency of the attachment, or had manifested his

knowledge of such pendency by replevying his property when it was seized by the officer. We can conceive of no reason why the defendant in this case might not, had he so chosen, have contested the justice of the plaintiffs' demand. We therefore think there was no error in rendering a general judgment against him, and it was not even suggested that in so doing any wrong or injustice was done him. His only defence having been found untrue, there is no merit whatever in his complaint that a general judgment against him was unauthorized.                    *Judgment affirmed.*