RIDDLE v. REESE.

1. JURISDICTION.—The Court of Common Pleas for the county of York has no jurisdiction to try a case against a resident of that portion of said county cut off to Cherokee County, although such action was commenced before formation of Cherokee County.
2. RESIDENCE.—The residence of a person can only be changed by his own voluntary act. A party incarcerated in jail cannot be said to have changed his residence to place of incarceration.
3. JURISDICTION once acquired may be divested by statute.
4. JURISDICTION cannot be conferred by consent or waived by any act or omission of the parties.

Before BUCHANAN, J., York, April, 1897.   Reversed.

Action by James H. Riddle, as administrator of Chas. T. Williams, *v.* Marion R. Reese.   From judgment for plaintiff, defendant appeals.

*Mr. James F. Hart*, for appellant, cites: *On point decided:* 22 Stat., 588;. 77 Ga., 584; 15 Ind., 42; 25 S. C., 389.

*Mr. Thos. F. McDow*, also for appellant, cites: *On point decided:* 22 Stat., 588; 47 S. C., 98.

*Messrs. Finley & Brice* and *Wm. B. McCaw*, contra, cite: *On point decided:* 22 Stat., 584; Code, 155, 156; 4 Hun., 487; 16 S. C., 285; 2 Wheat., 290; 9 Ib., 539; 15 How., 484.

Sept. 28, 1898.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.   This action was brought by plaintiff, as administrator of Charles T. Williams, suing for the benefit of the wife and child of his intestate, to recover damages, from the defendant, proportioned to the injury resulting from the death of his intestate, alleged to have been caused by the wrongful act of the defendant.   The action was commenced on the 6th of March, 1896, and was tried before his Honor, Judge Buchanan, and a jury, at the April term of the Court of Common Pleas for York County

in the year 1897, and resulted in a verdict for the plaintiff, upon which judgment was entered on the 14th of April, 1897. From this judgment the defendant gave notice of appeal based upon sundry exceptions set out in the record.

Inasmuch as the question of jurisdiction has been raised, it will be necessary first to determine that question before we can look into the merits; for if it shall be determined that the Court which undertook to render the judgment appealed from had no jurisdiction to try the case, then it would be neither necessary nor proper for us to inquire whether there were any errors committed in the progress of the trial. It is claimed by the appellant that the Court of Common Pleas for York County, in which the case was tried, had no jurisdiction to try the case, because by the act to establish Cherokee County, approved 25th of February, 1897—22 Stat., 588—it was expressly declared in the 10th section of said act: "That all suits pending in Spartanburg, Union, and York Counties, in which the defendants reside in the portions of said counties now established as the county of Cherokee, * * * shall be transferred to the calendars of the Courts of the county of Cherokee," &c.; and that the defendant being a resident of the town of Blacksburg (which is conceded to be in that portion of the county of York which is now embraced within the boundaries of Cherokee County) as well at the time of the passage of said act as at the time of the trial of this case, such trial could not be had in York County, but must be had in Cherokee County. If it be true that the defendant was, in the eye of the law, a resident of Blacksburg, in the county of Cherokee, at the time of the trial of this case, which was confessedly pending at the time of the passage of the act of 1897, above referred to, and which it was declared should take effect "from and after its passage," then the Court of Common Pleas for York County had no jurisdiction of the case, and any judgment it might undertake to render would be a nullity for want of jurisdiction— *Ware* v. *Henderson*, 25 S. C., 385, where the Court used

the following language: "It will be observed that the language used in those sections in regard to the place of trial is of an imperative character—'must be tried,' in sections 144 and 145, and 'shall be tried,' in section 146—and we do not see by what authority a Court can disregard such an imperative mandate from the law-making power. This language clearly implies that a case cannot be tried elsewhere than in the place appointed for the purpose, unless the place of trial be changed, under section 147 of the Code; and, therefore, if tried in the wrong county, the trial and the judgment entered therein are nullities, for want of jurisdiction." Here the act of 1897 contains equally imperative terms—"*shall* be transferred"—and we do not see by what authority this Court can undertake to disregard this imperative mandate of the law-making power.

It is contended, however, that the defendant was not a resident of Blacksburg, in the county of Cherokee, either at the time of the passage of the act of 1897—25th of February, 1897—or at the time of the trial—5th of April, 1897—because it appears from the testimony of E. A. Crawford, ex-sheriff, and John R. Logan, the present sheriff of York County, that the defendant was in jail in York County from some time in November, 1896, until the 13th of February, 1897, when he escaped from jail; and the contention is that the defendant had, thereby, lost his residence in Blacksburg (now and at the time of the trial in Cherokee County), which it is admitted was previously defendant's place of residence. This, it seems to us, is a very extraordinary proposition. The idea that a person can be said to have changed his place of residence by being arrested by the officers of the law and confined in a jail, and there kept by the authority of the law until he succeeds in making his escape, is a view which we cannot accept. In the eye of the law the place of a person's residence is to be determined by his own act and consent, and not by a force which he has neither the right nor the power to resist. The question of a person's place of residence is to be deter-

mined by his own intention, accompanied by his own voluntary act. Under this view, we have not deemed it necessary to consider the question of the competency of the testimony of either Crawford or Logan presented by one of the exceptions; for conceding its competency, for the purposes of this inquiry, it is very clear that it cannot have the effect claimed for it. The fact being conceded by the pleadings that the defendant was at the time of the killing of Williams a resident of the town of Blacksburg, then in the county of York, but now and at the time of the trial in the county of Cherokee, and there being no evidence that the defendant ever changed his place of residence, Blacksburg must still be regarded his place of residence. This is undoubtedly the rule where the question is as to domicil. *Bradley* v. *Lowry*, Speer's Eq., at page 14, where Johnston, Ch., in delivering the opinion of the Court, uses this language: "Nor is there any doubt that a man's abandonment of his domicil, however deliberate, is no destruction of it, unless he shall have acquired a new one. From the necessity of the case, the last residence, although intentionally and permanently forsaken, must still be regarded as his domicil." While it is true that this language was used in reference to the question of *domicil*, and while it may possibly be true that more strictness is required in determining a question of domicil than in determining a mere question of residence, yet the reason of the rule above stated—"*the necessity of the case*"—applies with equal force to the latter as well as to the former. Accordingly we find a case cited in the notes to page 123 of 21 Am. & Eng. Enc. of Law, holding that "The residence of a person having been shown to be in a particular place, is presumed to continue there until the contrary is proved." *Chaine* v. *Wilson*, 1 Bosw. (N. Y.), 673.

Again, it is contended that inasmuch as the Court of Common Pleas for York County had jurisdiction of the case when the action was commenced, on the 6th of March, 1896, prior to the passage of the act of 1897, establishing

Cherokee County, and transferring this case to that county for trial, such jurisdiction cannot be divested by any subsequent event. This may be, so far as the subsequent event depends upon or arises out of the acts or omissions of the parties, but it is not true that a subsequent event arising out of the acts of the law cannot change the jurisdiction. On the contrary, the law-making power may at any time make such changes in the jurisdiction of its several courts as may be deemed best, provided the constitutional limitations are not transgressed, of which there is no pretense here. See *Ex parte DeHay*, 3 S. C., 564, and *Grant* v. *Grant*, 12 S. C., 29. All the cases cited by respondent, except one, are cases in which it was claimed that the jurisdiction once vested had been divested *by the acts or omissions of the parties*, and not by the act of the law-making power. The exception is the case of *United States* v. *Dawson*, 15 How., 467, and in that case it was held, *not* that the act of Congress could not divest the Circuit Court of jurisdiction which it had previously acquired, but that the act simply empowered the District Court therein established for the western district of Arkansas to try such a case as that in question, without undertaking to divest the jurisdiction of the Circuit Court.

Finally, it is contended that the defendant, by appearing and answering, and announcing himself as ready to go to trial, has waived this question of jurisdiction. As we understand it, jurisdiction cannot be conferred even by actual consent, and cannot be waived by any act or omission of the parties. On the contrary, the question may be, and has been, raised for the first time, even in this Court. *State* v. *Penny*, 19 S. C., 218; *Ware* v. *Henderson*, *supra*. Indeed, it may be raised by this Court without any motion from either of the parties. *Lowery* v. *Thompson*, 25 S. C., 416. It is true, that jurisdiction *of the person* may be waived; but this is not a case of that character.

Inasmuch, therefore, as the Court of Common Pleas for

York Court had been deprived of jurisdiction to try this case by an act of the legislature, transferring the case to the Court of Common Pleas for Cherokee County before the trial was commenced, it follows that all the proceedings leading up to the judgment, and the judgment itself, are mere nullities for want of jurisdiction, and must be so declared.

This being our view, it is not only unnecessary, but would be improper, for us to consider the various questions presented by the exceptions as to alleged errors in the rulings and judgment of the Court.

The judgment of this Court is, that the judgment of the Court of Common Pleas for York County in this case be set aside for want of jurisdiction, without prejudice as to the merits, with leave to either party, if so advised, to have the case transferred to the proper Court for trial.