## STICKNEY *et ux. v.* CHAPMAN.

Under the facts disclosed by the record in this case the evidence demanded a finding that the defendant was a non-resident of the State of Georgia, and it was erroneous to direct a verdict to the contrary.

Submitted May 1, — Decided June 11, 1902.

Attachment. Before Judge Reece. City court of Floyd county. December 14, 1901.

*C. E. Carpenter*, for plaintiffs.
*Harris, Chamlee & Harris*, for defendant.

LITTLE, J. Stickney and wife caused an attachment to issue against the property of Chapman, on the ground that he was a non-resident of the State of Georgia, which was levied on two certain lots of land in the city of Rome, Georgia. To the declaration in attachment, which was filed, the defendant interposed a plea, and also filed a traverse of the grounds of attachment, in which he denied that he was a non-resident of the State of Georgia, but averred that he did reside in the State, and in Floyd county, at the time the affidavit to obtain the attachment was made, and had resided in said county for a period of time previous to the issuance of said attachment. On the trial of the case the court struck the plea on demurrer, and rendered a common-law judgment in favor of the plaintiff against the defendant for the amount sued for. A jury was then empaneled to try the issue made by the traverse of the grounds of the attachment, and evidence was submitted on the question of residence, which is not reported, as we base our opinion on evidence given by the defendant himself, to which reference is hereafter made. At the close of the evidence the court directed a verdict sustaining the traverse filed by the defendant. To this order and ruling plaintiffs excepted, as they did also to the refusal of the court to direct a verdict for the plaintiff. The only question presented for our consideration is whether the defendant, Chapman, was in law a non-resident of the State of Georgia at the time the attachment was sued out. If he was, the direction of a verdict in favor of the traverse of the grounds of the attachment was wrong. On the contrary, if he was a resident of the State of Georgia at the time of suing out the attachment, such direction would be upheld. The question of residence is a mixed one of law

and fact, the jury determining the facts and the judge determining whether the facts as established constitute residence. Ordinarily the evidence relied on should go to the jury, whose province it is to determine the fact of residence under proper instructions from the court; and had there been any conflict in the evidence in this case, it would have been error to direct a verdict either way. It happens, however, that there is no such conflict; and the sole question is, whether the facts in evidence show that the defendant Chapman was a resident of this State at the time the attachment was sued out. It is contended on the part of the defendant in error that at no time did he ever claim any other place than Rome as his home or residence, and that he was only temporarily absent from Rome when the attachment issued, traveling and exhibiting a circus, and therefore did not acquire a residence at any place other than Rome. He himself testified that he was born in the State of Georgia, and Rome had been his home and place of business for twenty-five years; that he was temporarily absent in South America for a while, but still claimed Rome as his home and residence. Evidently the theory of the defendant was, that if he was legally domiciled in Floyd county, then, without regard to the fact that for the purposes of business he continuously remained out of the State, he was a resident of the State; and further, that the fact that he had acquired no domicile elsewhere determined the question of his residence. This contention, when applied to the construction of laws relating to attachments of the property of non-resident debtors, is not sound. It is said by the compilers of the American & English Encyclopedia of Law, on authority, in volume 3, p. 198 (2d ed.), that residence and domicile are not synonymous terms as used in attachment laws, though the distinction is not always accurately drawn. It is the actual and not the legal residence which is meant in attachment statutes. Judge Drake in his work on Attachments (§ 58) also declares, on authority, that in determining whether a debtor is a resident of a particular State the question as to his domicile is not always involved, for he may have a residence which is not in law his domicile. Domicile includes residence with an intention to remain, while no length of residence without intention of remaining constitutes domicile. Our law declares that an attachment may issue when the debtor resides out of the State, and the point of our inquiry is directed to the question whether the

evidence showed that, at the time the attachment was sued out, Chapman resided out of the State of Georgia, and not to the question of where he was domiciled. If he was continuously without the State for a considerable period of time, so that ordinary processes of the law could not be served on him, he was unquestionably, under the authorities generally, a non-resident within the contemplation of the statute; but in the case of *Hickson* v. *Brown*, 92 *Ga.* 228, Mr. Justice Lumpkin went further and said that "the mere fact that a non-resident may be found and served does not prevent a creditor from exercising his right to sue by attachment."

In the case of Keller *v.* Carr, 40 Minn. 428, it was ruled that "A debtor may reside or remain out of the State so long and under such circumstances as to be a non-resident, within the meaning of the statute relating to attachments, although by reason of his intention to return his political domicile continues to be in the State. It is the question of *actual* residence, and not of domicile merely; and this is a fact to be determined by the ordinary and obvious *indicia* of residence. But a mere casual or temporary absence of a debtor from the State on business or pleasure will not render him a non-resident, even although he may not have a house of usual abode here, at which a summons against him might be served during such absence." In the opinion delivered in that case "residence" was defined as "an act," "domicile" as "an act coupled with an intent;" and it was said that "A man may have a residence in one State or country, and his domicile in another, and he may be a non-resident of the State of his domicile, in the sense that his place of actual residence is not there. Hence the great weight of authorities hold — rightly so, as we think — that a debtor, although his legal domicile is in the State, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an actual non-residence, within the meaning of the attachment statute." The Supreme Court of California in Egener *v.* Juch, 101 Cal. 105, ruled that the residence referred to by attachment laws was actual, as contradistinguished from constructive or legal residence or domicile. In the case of Carden *v.* Carden, 107 N. C. 216, Shepherd, J., quotes the following from a former decision of that court: "Without deciding who, in law, is a non-resident in other respects, but confining this decision to the construction of this statute [relating to attachments], the conclusion

is, that where one voluntarily removes from this to another State, for the purpose of discharging the duties of an office of indefinite duration, which require his continued presence there for an unlimited time, such a one is a non-resident of this State for the purposes of an attachment, and that notwithstanding he may occasionally visit this State, and may have the intent to return at some future time." He says further: "The prominent idea is, that the debtor must be a non-resident of this State, where the attachment is sued out, not that he must be a resident elsewhere." If we apply these rules, which seem to be sound and reasonable, to the facts proved in this case by the evidence of the defendant himself, it must be ruled that he was such a non-resident of this State at the time the attachment was sued out as to authorize its issue on that ground. The statute is fully met when it is shown that Chapman was a non-resident of Floyd county, that is, that he did not do the act of residing there, as under the evidence it does not appear that he claimed residence in any other county of Georgia. He himself testified, on cross-examination, that about eleven years ago (1891) he was employed as conductor on a railroad in South America; that he returned "sometimes every year, sometimes two years, and never less than three years," to his home in Georgia. He remained there until 1898, when he was injured. He then came, not to Georgia, but to New York, for medical treatment. Most of the time afterwards was spent by him in the City of New York, where he was being treated, and where he had a pending suit against the railroad. Afterwards he returned to Rome — the latter part of 1900, and then went to South America on a matter of business, where he remained until the spring of 1901. He had never been to Georgia but once since he went to South America in October or November, 1900, and on that occasion he remained three or four days, and then returned to South America to look after his business, and returned to New York in October, 1901. He was there at the time the interrogatories were executed. The attachment issued in April, 1901. There was much other evidence as to the domicile and residence of Chapman than that which we have extracted from his evidence, but we are at liberty to take his evidence most strongly against himself. Doing so, we extract that which appears above, as conclusive of the facts touching his residence. Wherever the legal domicile of the defendant in attachment may

have been, it is clear that he did not reside in Georgia in the sense contemplated by the attachment law, which authorizes such a writ to issue against a non-resident of the State. The judgment of the court below, directing a verdict in favor of the traverse of the ground that the defendant was a non-resident, is

*Reversed. All the Justices concurring, except Lewis, J., absent.*