### 168, 169. SHIRLEY *v.* THE STATE.

1. The facts presented were not sufficient to show that the grand juror, whose competency was challenged on the ground that he was no longer a citizen of the county at the date of his service, had so far proceeded with the act of changing his domicile as to make him ineligible; therefore the verdict against the plea in abatement was proper under the evidence.
2. In the main case the evidence authorized the verdict of guilty.

Indictment for disturbing divine service, from Rabun superior court—Judge Kimsey. November 6, 1906.

Submitted January 28,—Decided February 5, 1907.

*W. S. Paris,* for plaintiff in error.

*W. A. Charters, solicitor-general,* contra.

POWELL, J. The defendant was indicted and convicted in Rabun superior court for the offense of disturbing public worship. It seems, from the evidence set out in the record, that services

were held at "Old Tiger Church," in that county, on Christmas.
day, and that the defendant, although he was described by the
pastor of the church as "a scoffer at religion," attended.   The in-
dictment, in substance, alleges, among other things, that the de-
fendant carried to the church a considerable quantity of intoxi-
cating liquors, both within and without his person; and in corrob-
oration of this the evidence disclosed that he appeared to be in-
toxicated, and that one of the brethren thought he smelled whisky
on him.   The defendant also stated to the preacher that he had
just drunk some ginger ale, but as to what particular kind of
ginger ale is brewed about Christmas times in the mountains of
north Georgia, in which Rabun county is situated, the record is
silent.   However, it seems to have stimulated the defendant's gen-
erosity, for the preacher testified:  "Just before the services be-
gan, he took me out near the schoolhouse, where his fine Berk-
shire sow was lying in her bed, and showed her to me, and told
me that he would give me one of her pigs."   Upon going into the
church the defendant first took his seat near the entrance, but
as the services progressed he kept moving nearer and nearer to
the pulpit.  When the singing began he joined in, and, as Long-
street in his "Georgia Scenes" says of the singing of Ned Brace
on his famous visit to Savannah, "he sang very loud, and, appar-
ently, purposely to make a discord."   As the preacher proceeded
with his sermon the defendant began to express his approbation,
interrupting him several times to say, "Well, that is the best ser-
mon I ever heard you preach."   Finally his zeal became so great
that he went up into the pulpit and took hold of the preacher's
arm and continued to compliment the sermon.    This naturally
created some disturbance; indeed the preacher stated in his testi--
mony:  "I was so much disturbed by him that I thought I would
have to stop preaching, but I knew defendant was a scoffer at reli-
gion, and I determined that the devil, through him, should not
break up the meeting, and so I kept on preaching notwithstanding
his interruption."

Upon arraignment the defendant filed a plea in abatement, as-
serting that Anderson, one of the grand jurors who participated
in finding the indictment against him was incompetent as a juror,
because he was not a citizen of Rabun county at the time of his
service.   The evidence taken upon the plea showed that Ander-

son had been living in Rabun county for two years prior to the term of the court at which he served. During the week imme-diately preceding the convening of the court, he had sold the lands on which he had been residing, with the intention of moving to Cornelia in Habersham county, and had loaded his household goods upon the train with a view of sending them there. His wife and smaller children had gone to her father's home in Tur-nerville, which is also in Habersham county, but he and one son remained in Rabun county to look after the removal of a sawmill and some cattle. During the week in which court was in session he boarded at a hotel in Rabun county. After the adjournment of the court he went on to Cornelia, and his wife and children joined him there. There was certain other testimony admitted in behalf of the State, but, since objection was made to its introduc-tion, in order to avoid going into the questions made by these ob-jections, we will decide the case as if this testimony had been excluded. The jury found against the plea in abatement.

1. One of the qualifications of a grand juror is that he shall have resided in the county six months preceding the time of his service. The contention in this case is that the grand juror was no longer a resident of Rabun county at the date of his service. Under the facts stated above, we do not think that the contention is well taken. Under the circumstances Anderson retained his domicile and legal residence in Rabun county until he succeeded in acquiring residence and domicile in Habersham county. It is true that his wife and a part of his children had gone to Turner-ville, in the latter county; however, this was not for the purpose of making their home at Turnerville, but for the purpose of visit-ing her father. The mere fact that the place at which they were visiting happened to be in the same county in which thereafter they took up their residence did not constitute that county the locus of the husband's domicile pending such visit. The effect of the decisions in *Hickson* v. *Brown,* 92 *Ga.* 228, and of *Collins* v. *Camp,* 94 *Ga.* 460, when construed together, seems to make it clear that at the time of his service the juror was, as a matter of law, under the facts stated, a citizen of Rabun county.

2. We can not relieve the defendant of the effects of his un-timely conviviality by holding that the verdict against him in the main case is unauthorized.　　　　　　*Judgment affirmed.*