## 4658. FARMER v. PHILLIPS.

1. The term "residence" has been judicially defined as "an abode or dwelling place, as distinguished from a mere temporary locality of existence."
2. A resident of Tift county moved his family over into Worth county, intending to remain there until a house in which he expected to reside, located in Tift county, was completed and made ready for his family residence, when he intended to return to Tift county and resume his residence with his family therein. While temporarily sojourning in Worth county he executed a mortgage on personal property, and this mortgage was recorded in Worth county. Held, (1) that the mortgagor's residence was in Tift county, and the mortgage should have been recorded in that county; (2) that a second mortgage executed by him, covering the property covered by the first mortgage and duly recorded in Tift county (the holder of the second mortgage having no actual notice of the existence of the first mortgage), was prior in dignity to the first mortgage, and the proceeds arising from the sale of the mortgaged property were properly awarded to the fi. fa. issued on the foreclosure of the second mortgage.

DECIDED MAY 6, 1913. REHEARING DENIED JUNE 10, 1913.

Money rule; from city court of Tifton—Judge R. Eve. December 7, 1912.

Perry, Foy & Monk, for plaintiff.

HILL, C. J. The question in this case arose on a rule to distribute money, and was decided by the judge of the court below, by consent, without the intervention of a jury, upon an agreed statement of facts. The facts were as follows: In the early part of January, 1912, J. L. Farmer sold to B. H. Holt a horse, and took a mortgage from Holt for the purchase-money. This mortgage was properly executed, and was recorded at once in Worth county. Subsequently Holt executed a second mortgage, covering this horse, to one Phillips. The second mortgage was properly executed, and was recorded in Tift county. It was foreclosed by Phillips, and the horse was levied upon and sold by virtue of the mortgage fi. fa. Farmer also foreclosed his mortgage on the horse, and had an execution issued thereon. This execution was placed in the hands of a levying officer before the sale of the horse, with instructions to the officer to hold up the money arising from the sale and await the order of the court directing its proper distribution as between the two mortgage executions. When the first mortgage given by Holt to Farmer was executed, Holt lived in Tift county on a place known as the Parks place, during the year 1910; and when he moved from that place about Christmas, 1911, he contemplated moving to an-

other place in Tift county, with the intention of residing there during the year 1912. The place at which he expected to reside during 1912 is immediately across the line in Tift county, on the east side of a road which is the line between Worth and Tift counties. Upon arriving with his household effects, that being the only property he owned (he being a tenant), the house in which he expected to reside during the year 1912 was incomplete, not having been finished in its building, and was unfit for occupation; and thereupon he made arrangements to move his household goods and his family to a house just across the road in Worth county, where he remained for a few weeks until his house was ready. While stopping at the house in Worth county he bought the horse in question from Farmer, executing to Farmer a mortgage note. At the time of selling the horse to Holt, and at the time of the execution of the mortgage, Farmer inquired of Holt where he lived, whether in Worth or Tift county, and was told by Holt that he lived in Worth county. Farmer did not know at the time of taking the mortgage note, or at the time of having it recorded, or even until after its foreclosure, that Holt, at the time of the execution of his note and mortgage, contemplated moving into Tift county. The mortgage executed by Holt to Phillips was properly recorded in Tift county. The judge awarded the money arising from the sale of the horse to the fi. fa. in favor of Phillips, and Farmer excepted to this judgment.

The only question to be decided by this court is as to the record of the mortgage executed by Holt to Farmer. It is conceded that this mortgage was for the purchase-money of the horse sold by Farmer to Holt, and it is not contended that Phillips, who took the second mortgage, had any actual knowledge of the existence of the first mortgage. If Farmer's mortgage was properly recorded, of course it constituted constructive notice to Phillips, and Farmer was entitled to the proceeds of the horse. The Civil Code (1910), § 3259, provides that a mortgage on personalty must be recorded "in the county where the mortgagor resided at the time of its execution;" and it is insisted by the plaintiff in error that the word "resided," in this section, refers to actual residence of the mortgagor, as contradistinguished from his domicile or political residence. In determining whether a mortgagor is a resident of a particular county, the question as to his domicile may not be in-

volved; for he may have a residence which is not in law his domicile. Domicile includes residence with intention to remain, while no length of residence without intention of remaining constitutes domicile. Drake on Attachments, § 58. In construing the statute requiring that a mortgage on personalty shall be recorded in the county of the mortgagor's residence at the time of the execution of the mortgage, the question of residence, and not domicile, is involved; and, as was said by the Supreme Court of Minnesota in Keller *v.* Carr, 40 Minn. 428 (42 N. W. 292), and approved by the Supreme Court of this State in *Stickney* v. *Chapman,* 115 *Ga.* 759, 761 (42 S. E. 68), the fact of actual residence is to be determined by the ordinary and obvious indicia of residence. In both of the cases just cited the question under discussion was as to the issue of non-residence under attachment laws; and in the Keller case it was held that a mere temporary or casual absence of a debtor from the State on business or pleasure will not render him a non-resident. The words "resident" and "residence" import more than a temporary stay in a place for the performance of a single piece or job of work, especially where the workman at the same time has a home and permanent place of abode in another place; and the term "residence" has been judicially defined as "an abode or dwelling place, as distinguished from a mere temporary locality of existence." Words & Phrases, vol. 7, p. 6155. Under these definitions of the term, applied to the facts of this case, we must conclude that Holt did not reside in Worth county when he executed the mortgage note to Farmer, but at that time was simply temporarily sojourning in Worth county until his permanent residence should be ready for his reception in the county of Tift; in other words, that he had not abandoned his residence in Tift county by a temporary dwelling in Worth county for a short time, until he could carry out his intention of resuming his residence in Tift county. While it seems that Farmer exercised due diligence in making inquiry as to the place of residence of Holt when he executed the mortgage to him, and was not informed as to the facts by Holt, we are not at liberty to add to the mandatory statute of the legislature which declares that a mortgage on personal property must be recorded in the county of the residence of the mortgagor, in order to constitute constructive notice of its existence. Entertaining this view of the law, it follows that the judgment of the lower

court, awarding the money to the holder of the second mortgage, who had neither constructive nor actual notice of the first mortgage, should be       *Affirmed.*