9677.

CLARKE *ET AL.* v. McCOWN *ET AL.*

(92 S. E. 479.)

1. ELECTIONS—ELECTION CONTESTS—PLEADING—REMEDIES.—If an election contest petition is indefinite, the remedy of the contestees is not by demurrer, but by a motion to make the allegations of the protest more definite and certain.

2. ELECTIONS — CONTESTS — INCONSISTENT FINDINGS AND JUDGMENT. — Where the judgment in an election contest was that the election was void, an apparent inconsistency in finding that more than one-third of the legal votes were cast against a proposition requiring for its success at least two-thirds of the votes cast would give way to the ultimate judgment, and the election could not be held valid as a defeat of the proposition submitted.

3. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE.—Residence of a person being a mixed question of law and fact, his intention is the controlling element.

4. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE—PROOF OF INTENTION.—Intention of a voter may be proved by his acts and declarations or other circumstances.

5. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE—PROOF OF INTENTION.—When all the circumstances, taken together, are not inconsistent with a voter's intention to retain an established residence, they are insufficient in law to deprive him of his rights; for it will be presumed that he intends to continue a residence once gained until the contrary appears.

6. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE—PROOF OF INTENTION.—That a man does not live, sleep or have his washing done where he has gained a residence, or that his family lives elsewhere, or that he works elsewhere are facts not necessarily inconsistent with intention to continue residence, and, if opposed by his oath, corroborated by indisputable circumstances, are insufficient to deprive him of the right to vote gained by the established residence.

7. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE—PROOF OF INTENTOIN.—Evidence *held* insufficient to sustain finding that a voter whose vote was protested on the ground of nonresidence had lost his residence once established in the county where he voted.

8. ELECTIONS—QUALIFICATIONS OF VOTERS—RESIDENCE—PROOF OF INTENTION.—If a person votes at an election in another county, his act being inconsistent with an intention to retain his residence, he is not entitled to vote in the county.

9. ELECTIONS—QUALIFICATIONS OF VOTERS—PAYMENT OF POLL TAX.—Const., art. 2, sec. 4, subd. "a," requiring as a prerequisite to the right to vote that the voter shall have paid a poll tax six months before election, if then due and payable, applies to all elections whether general or special.

10. ELECTIONS—QUALIFICATIONS OF VOTERS—PAYMENT OF POLL TAX.—Under such section, the poll tax for the year 1915, being payable at any time between October 15th and December 31st, without penalty, any elector who paid the tax on or before December 31st was entitled to vote at the election on May 9, 1916.

11. ELECTIONS—VALIDITY—RECEIPT OF VOID BALLOTS.—Where enough voters were permitted to vote without having paid the poll tax under

FOOTNOTE.—As to change of domicile when one leaves one place with intention to settle in another, see note in A. & E. Ann. Cas. 1914b, 484, 40 L. R. A. (N. S.) 986. Going to another place to teach school or preach, as effecting change of domicile or residence, see notes in L. R. A. 1917a, 294, 22 L. R. A. (N. S.) 996. Gaining new domicile or residence, see notes 33 L. R. A. (N. S.) 766-768.

Const., art. 2, sec. 4, subd. "a," to have changed the result of the election, the whole election was void, where the poll could not have been purged of such illegal votes.

Before BOWMAN, J., Monck's Corner, July, 1916. Affirmed.

Election contest between J. P. Clarke and others and R. M. McCown and others. From a judgment of the Circuit Court affirming a decision of the State board in dismissing the petition, the contestees appeal.

*Messrs. Nathans & Sinkler,* for appellants, cite: *As to procedure on contest:* 86 S. C. 458; 97 S. C. 19, 20; 101 S. C. 514. *Effect of registration:* 97 S. C. 10. *Error of law in determining residence of voter:* 102 S. C. 239; 86 S. C. 455. *Residence depended on intention:* 73 S. C. 181; 47 S. C. 98; 38 S. C. 88. *Payment of taxes qualification for suffrage:* Const., art. II, sec. 4; Civil Code, sec. 200; 84 S. C. 450; 85 S. C. 448; 86 S. C. 455. *Change of result:* 78 S. C. 461; 79 S. C. 414; 86 S. C. 451.

*Mr. Attorney General Peeples* and *Mr. Wm. C. Wolfe,* for respondent.

May 12, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

On May 9, 1916, an election was held at Carns Crossroads precinct, in Berkeley county, on the question of annexing a part of that county to Charleston county. On the face of the returns there were 48 votes for and 22 against the proposition, the vote for annexation being just 4 more than the necessary two-thirds. The election was contested. The contestants alleged that the votes of J. M. Heape, C. M. Henderson, W. L. Hyer, J. H. Koester, ——— Leggett and Gadsden Wiggins were illegal, because they were not residents of the precinct, and that numerous other persons (not named) were permitted to vote whose votes were illegal for

the same reason, that numerous persons (not named) were permitted to vote whose votes were not legal because they had not paid their poll tax six months before the election, and that enough illegal votes had been cast to change the result or render it doubtful. The contestees demurred to these allegations on the ground that they "are indefinite, uncertain, and general, and do not allege such specific facts as would enable contestees to meet the charge of illegality and unfairness." The demurrer was overruled.

After hearing all the testimony offered by both sides, the county board of canvassers found that enough illegal votes had been cast to change the result, and held the election void. On appeal the majority of the State board of canvassers, in their formal judgment, overruled all exceptions, and adopted as their own the findings and decisions of the county board. The contestees then sued out a writ of *certiorari* in the Circuit Court, and, upon reviewing the proceedings, the Court affirmed the decision of the State board and dismissed the petition; hence this appeal.

There was no error in overruling the demurrer. The remedy of contestees was not by demurrer, but by motion to require the allegations of the protest to be made more definite and certain. It follows that there was no error in admitting evidence in support of the allegations of the protest.

Each of the boards and the Circuit Court filed an opinion setting out their findings and conclusions and the reasons therefor. In each of these opinions there are some findings and conclusions that are erroneous, as matter of law, and, therefore, reviewable by this Court. None of them, however, are of such material consequence as to affect the final conclusion. But, if passed without notice, some of them may result in prejudice to the rights of the parties interested hereafter; and for that reason these will be given consideration.

In the opinion of the State board it is said that more than one-third of the legal votes cast were against annexation, and, therefore, the scheme failed, and that is repeated in the judgment of the Circuit Court. From this appellants would have the inference drawn that it was held that the election was valid as a decision against annexation, and hence that it was erroneous, because inconsistent with the judgment that the election was void. But, if that be so, it would not help appellants, because it appears from the record that such finding and conclusion would be unsupported by evidence. That being so, and it being also inconsistent with the formal judgment, which is right, the latter controls. As above said, we have found other errors in the findings and conclusions below which do not affect the result.

We notice, next, the findings that some of the voters were disqualified because they were nonresidents. The residence of a person is a mixed question of law and fact; and the intention of that person with regard to the matter is deemed the controlling element of decision. His intention may be proved by his acts and declarations, and perhaps other circumstances; but when these, taken all together, are not inconsistent with the intention to retain an established residence, they are not sufficient in law to deprive him of his rights thereunder, for it will be presumed that he intends to continue a residence gained until the contrary is made to appear, because inestimable political and valuable personal rights depend upon it. Therefore it is a serious matter to deprive one of his residence, and it should not be done upon evidence which is legally insufficient, as was the evidence in this case with reference to some of the voters whose votes were held to be illegal.

That a man does not live or sleep or have his washing done at the place where he has gained a residence, or that

his family lives elsewhere, or that he engages in employment elsewhere are facts not necessarily inconsistent with his intention to continue his residence at that place, and when they are opposed by his oath, and that is corroborated by indisputable circumstances, as in this case, showing that it was not his intention to change his residence, the facts and circumstances stated become legally insufficient as evidence upon which he may be deprived of the rights to which he is entitled by reason of the residence gained.

The testimony shows that J. M. Heape lived in Berkeley county more than sixty years. In 1908, when he was about 61 years old, he moved to Charleston, and obtained registration in that county. In 1912 he moved back to Berkeley county, and obtained registration as an elector of this precinct. He testified that his residence is, and, since 1912 has been, in this precinct; that he has since that time voted there and nowhere else. He has even run for and been elected to office there. He is now, and for several years has been, one of the magistrates for Berkeley county. Because his family lives in Charleston and he visits them once a week, or perhaps daily, according to some of the witnesses, and because his name still appears on the registration book in Charleston, no doubt through inattention or inadvertence of the officer in charge thereof, it was held that his vote was illegal. The evidence is legally insufficient to sustain that finding. Without going into details, the same may be said of the evidence upon which C. M. Henderson was held to be disqualified. Parker and Wiggins were erroneously held to be disqualified because they had not been residents of the State a sufficient length of time when their registration certificates were issued. This holding was contrary to the decision of this Court in *Rawl v. McCown*, 97 S. C. 1, 81 S. E. 958, where it was held that registration by the proper officer is conclusive evidence of the elector's qualification therefor at the time it was issued, and that his right to vote thereon cannot be collaterally

attacked, but it may be challenged for causes subsequently occurring, such as conviction of a disqualifying crime, removal from the precinct, the failure to pay his taxes within the time required by law, etc.

As to the others who were held to be disqualified, the testimony was legally sufficient, and, therefore, the findings are not reviewable by the Courts. Some of them admitted that they had moved out of the precinct, with the intention of changing their residence. It appeared that others had voted in elections in another county. That was an act inconsistent with the intention to retain their residence in Berkeley county.

Subdivision "a" of section 4, art. II, of the Constitution prescribes as one of the prerequisites of the right to vote "the payment six months before any election of any poll tax then due and payable," and subdivision "e" of the same section requires of every person offering to vote "proof of the payment of all taxes, including poll tax, assessed against him and collectible during the previous year." By the plain terms of the Constitution these provisions apply to all persons offering to vote at any election. Therefore it makes no difference whether it is a general or a special election.

The purpose of the lawmakers was to stimulate due performance by the citizens of their duty to support the government, and penalize delinquency in that regard, and forestall the evil practice sometimes resorted to by those interested in elections of indirectly purchasing votes by paying the taxes of delinquents immediately before an election to qualify them to vote therein. It was not intended to penalize by disqualifying one who had not become delinquent in the matter of paying his taxes. One who merely takes advantage of a privilege extended to him by the law is not in default. Therefore, although the taxes for the year 1915 were payable at any time between October 15th and December 31st, without penalty, all electors who

paid their taxes on or before December 31st were not in default and were entitled to vote in any election held after that date, if otherwise qualified. But those who failed to pay their taxes on or before December 31st were disqualified from voting in any election held within six months thereafter.

The undisputed evidence shows that some 10 or 12 persons were permitted to vote in this election whose poll tax was paid after December 31, 1915. These votes were illegal; and, as there were enough of them to have changed the result, and as the poll could not have been purged of them, because it did not appear how they voted, the election was thereby vitiated.

We have often held that we are not concerned with the reasoning upon which the judgment below is rested if the judgment itself is right, and may be sustained upon sound reasons. Therefore, in affirming the judgment of the Circuit Court, we do not affirm any of the erroneous findings or conclusions of either of the boards, or of the Circuit Court. We merely affirm the judgment that the election was void, on the ground that it appears upon the face of the proceedings that enough illegal votes were cast of which the poll could not have been purged to have affected the result or to have rendered it uncertain.

Judgment affirmed.