17507

G. A. C. FINANCE CORPORATION, Plaintiff-Respondent, v.
CITIZENS AND SOUTHERN NATIONAL BANK OF
SOUTH CAROLINA, Defendant-Appellant

(107 S. E. (2d) 315)

*Messrs. Robinson, McFadden & Dreher,* of Columbia, *for Appellant,*

*Walker E. Anderson, Esq.,* of Hartsville, *for Respondent,*

February 24, 1959.

OXNER, Justice.

The controversial issue in this case is whether a chattel mortgage on a Chevrolet truck given by Lemuel L. Capell to the G. A. C. Finance Corporation on February 28, 1957, and recorded in the office of the Clerk of Court for Darlington County on March 1, 1957, has priority over a chattel mortgage on the same truck given by Capell to Citizens & Southern National Bank on June 21, 1957, and recorded in the office of the Clerk of Court for Richland County on August 28, 1957.

The Bank's claim of priority is based on the contention that Capell was not a resident of Darlington County when the mortgage to the Finance Corporation was executed and, therefore, the recording of said mortgage in Darlington County did not furnish constructive notice. At the conclusion of the testimony each party made a motion for a directed verdict. The Court below concluded the testimony was conflicting, refused both motions, and submitted the following question to the jury: "Was Lemuel L. Capell a resident of

Darlington County on February 28, 1957?" The answer of the jury was in the affirmative. The Bank urges on this appeal that the undisputed testimony is to the contrary. .

Capell, the mortgagor, was in the upholstery business. A bill of sale in evidence shows that this truck was sold, when new, to "Capell Uphostery Company, Dillon, S. C.," on January 4, 1956 for $1,844.73.

On January 21, 1957, Capell borrowed $400.00 from the Hartsville branch of the Finance Corporation on an unsecured note. In the application he gave his phone number as 9218-J and his address as "Route 4, Hartsville, S. C.", which is in Darlington County, and represented that he had lived at this address for four years. He further stated that previous to that time he had lived at Route 1, Marion, S. C., for a period of three years and prior to that had resided at Columbia. Before making the loan, the Finance Corporation secured a report from the Credit Bureau and the manager also made a personal investigation which he said showed Capell as living at the address given. On February 28, 1957, Capell applied to the Finance Corporation for a loan of $900.00 on the truck. In his application he again gave his phone number as 9218-J and his address as Route 4, Hartsville, stating that he had lived at this address for a period of four years. The manager of the Finance Corporation inspected the truck at Hartsville and examined the registration card. The loan was approved and note and mortgage in the sum of $900.00 executed in which Capell's address was given as Route 4, Hartsville, S. C. The proceeds of this loan, after deducting interest, were applied in part to the payment of the $400.00 unsecured note and the balance given to Capell.

It appears that a registration card issued by the Highway Department on January 18, 1957, showed Capell's address as Route 4, Hartsville. On January 31 another registration card, correcting the serial number, contained the same address.

The foregoing is a brief summary of the testimony offered by the Finance Corporation on the issue of Capell's residence at the time its mortgage was executed. That offered by the Bank was as follows:

A witness who conducted a refrigeration and air conditioning business at 6108 Monticello Road, Richland County, testified that Capell opened an upholstery shop next door to him at 6110 Monticello Road, on February 1, 1957 and operated the business at this address until July 30, 1957. He said that on two occasions during a cold spell in February, he assisted Capell in getting his truck started at Denny Terrace, a residential subdivision in Richland County, where he assumed Capell was living, although he "couldn't swear that he was living there," and that after a "couple months", Capell left Denny Terrace and moved to West Columbia, Lexington County.

On February 13, 1957, Capell opened an account with the Citizens & Southern National Bank at Columbia and on the signature card gave his address as "6108 Monticello Road." On June 21, 1957 he borrowed from the Bank the sum of $865.20 secured by a note and chattel mortgage on the truck. The proceeds, after deducting interest and insurance charges, were applied in part to the payment of an unsecured note held by the Bank and the balance turned over to Capell. He represented to the Bank that he was engaged in the upholstery business at 6110 Monticello Road and that the truck was unencumbered. A credit report obtained before making the loan disclosed that he was living in West Columbia, Lexington County, and had lived there for a period of six months; prior to which time he had lived at Whiteville, N. C., for a period of five years.

Both the mortgage held by the Finance Corporation and that held by the Bank were payable in monthly installments. After making one monthly payment, Capell defaulted in paying the August installment on the Bank's mortgage. In September he turned the truck over to the Bank and stated

that he would soon call by and bring his account up to date but never did so.

He made only four monthly payments on the mortgage held by the Finance Corporation. After he defaulted in paying the August installment, the Finance Corporation learned that the Bank had repossessed the truck and notified the Bank of its mortgage. This was the first knowledge that the Bank had of the Finance Corporation's mortgage. Some correspondence ensued between the parties and finally on October 25, 1957, the Bank wrote the Finance Corporation stating that when the latter's mortgage was executed Capell was a resident of Richland County and, therefore, the recording of the mortgage in Darlington County did not afford constructive notice. Thereafter after due advertisement, the Bank sold the truck at public auction on December 30, 1957. It brought $640.00. The Bank incurred $5.00 expenses, realizing $635.00 net, which was about $150.00 less than the amount due on its mortgage.

· A few months later the Finance Corporation brought this action against the Bank seeking damages in the sum of $675-.00 for conversion of the truck. After the verdict of the jury, the Court below awarded judgment in favor of the Finance Corporation against the Bank in the sum of $635.00, which was a little less than the amount due on the Finance Corporation's mortgage.

Under the terms of Section 60-101 of the 1952 Code, a chattel mortgage is valid so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice only from the time such mortgage is recorded in the county "in which the owner of such property resides, if he resides within the State, or, if he resides without the State the county in which such personal property is situated at the time of the delivery or execution of such deed or instrument."

The recording statutes in a number of other States similarly require a chattel mortgage to be recorded at the place

of the mortgagor's residence. 10 Am. Jur., Chattel Mortgages, Section 93. In most jurisdictions the courts hold that the word "residence" as used in these statutes means actual residence and not "domicile." 14 C. J. S., Chattel Mortgages, § 151, b. page 757. In construing a North Carolina statute similar to ours, the Supreme Court of that State in *Sheffield v. Walker,* 231 N. C. 556, 58 S. E. (2d) 356, 359, said:.

"When due heed is paid to both the legislative purpose and the context, the meaning of the statutory requirement under scrutiny becomes plain. G. S. § 47-20 and G. S. § 47-23 are designed to give notice of chattel mortgages and conditional sales to third persons; and the requirement that such instruments are to be registered in the county where the maker resides is based on the legislative realization that 'persons interested to have knowledge in such respect would go to the county where a person resides to see what disposition he had made of his personal property by deeds and other instruments required to be registered'. *Bank of Colerain v. Cox,* 171 N. C. 76, 87 S. E. 967, 968.

"Manifestly, the recordation of a chattel mortgage or a conditional sale at the domicile of the maker would not be likely to give notice to third persons unless the place of his domicile and the place of his actual abode happen to coincide. Moreover, the end in view could not be attained by permitting registration in a place when the maker is physically present in the character of a mere transient. It thus appears that under these statutes 'residence' means something more than a mere physical presence in a place, and something less than a domicile. The term clearly imports a fixed abode for the time being."

While the word "residence" has been construed by this Court in many connections—as used in a venue statute, *Barfield v. J. L. Coker & Co.,* 73 S. C. 181, 53 S. E. 170; *Roof v. Tiller,* 195 S. C. 132, 10 S. E. (2d) 333, 132 A. L. R. 500; as used in a statute imposing an income tax, *Phillips v. South Carolina Tax Commission,*

195 S. C. 472, 12 S. E. (2d) 13; as used in the Workmen's Compensation Act, *Horton v. Baruch,* 217 S. C. 48, 59 S. E. (2d) 545; as relating to voting qualifications, *Clarke v. McCown,* 107 S. C. 209, 92 S. E. 479; as used in the attachment statute, *Munroe v. Williams,* 37 S. C. 81, 16 S. E. 533, 19 L. R. A. 665—we have never had occasion, so far as our investigation discloses, to define the word "resides" as used in our recording statue. However, we are in substantial accord with the construction adopted by the Supreme Court of North Carolina, which has been quoted.

Reverting now to the facts of the instant case, it will be noted that each party offered considerable testimony relating to declarations or statements made by Capell as to his place of residence. Such declarations are not conclusive. *Stewart v. Platt,* 101 U. S. 731, 25 L. Ed. 816; *Farmer v. Phillips,* 12 Ga. App. 732, 78 S. E. 353; *Marine Midland Trust Co. of Binghamton v. Dugan,* 202 Misc. 847, 119 N. Y. S. (2d) 714. In *Stewart v. Platt, supra,* the Court said that the rights of subsequent creditors or purchasers "depend not upon recitals or representations of the mortgagors as to their residence but upon the fact of such residence. The actual residence controls the place of filing, otherwise the object of the statute would be frustrated by the mere act of the parties to the injury of those whose rights were intended to be protected."

It is rather clear from the testimony that Capell was a resident of Darlington County when the Finance Corporation made him an unsecured loan on January 21, 1957. In fact, there is no evidence to the contrary. This being true, there arose a presumption that he continued to reside in Darlington County until the contrary was proved. *Riddle v. Reese,* 53 S. C. 198, 31 S. E. 222, 223. Prior to February 28 had he changed his residence to Richland County? In *Riddle v. Reese, supra,* the Court said: "The question of a person's place of residence is to be determined by his own intention, accompanied by his own voluntary act." We think the sharp conflict in the evidence as to the

residence of Capell on February 28 necessitated submission of this issue to the jury. We cannot hold as a matter of law that Capell was not a resident of Darlington County on February 28, 1957.

The only other question raised by the exceptions is that the Court erred in failing to explain to the jury the meaning of the word "reside" as used in Section 60-101 of the 1952 Code. At the conclusion of the charge, the trial Judge, in accordance with the requirement of Section 10-1210 of the 1956 Code Supplement, temporarily excused the jury and gave counsel an opportunity to express any objections or make any suggestions as to the charge. Counsel for the Bank did not mention the omission now complained of, made no objection to the charge and requested no amplification or clarification in any respect. The Bank is, therefore, not in a position to now complain. *Brown v. Hill*, 228 S. C. 34, 88 S. E. (2d) 838; *Tate v. LeMaster*, 231 S. C. 429, 99 S. E. (2d) 39; *Lundy v. Lititz Mutual Insurance Co.*, 232 S. C. 1, 100 S. E. (2d) 544.

Affirmed.

TAYLOR, LEGGE and Moss, JJ., concur.

STUKES, C. J., not participating.