## 8262.   EMPIRE COTTON OIL COMPANY *v.* CONTINENTAL GIN COMPANY.

JENKINS, J.   Whether or not the defendant occupied the position of a bona fide purchaser, a duly recorded purchase-money note reserving title to personal property described as follows: "The following machinery sold to the undersigned by Continental Gin Company, viz.: 3 70 saw R. H. Winship plain gins; 3 70 saw class C feeders; 1 210 saw condenser with support and flues; 1 20 saw lint flue; 1 30 inch cylinder D. B. steam power press with transfer and feedings; 1 10 inch class C elevator as per contract; shafting, pulleys, and belting as per contract," was sufficient to afford record notice to third persons of the fact that the title to the property was in the vendor, it also appearing that, following the contract of sale, the vendees took possession of the property, and that it remained in their hands and was operated by them for an entire ginning season. *Thomas Furniture Co. v. T. & C. Furniture Co.,* 120 *Ga.* 879 (2) (48 S. E. 333); *Charles* v. *Valdosta Foundry &c. Co.,* 4 *Ga. App.* 733 (62 S. E. 493). There is no provision of law requiring that such an instrument shall state the locality of the machinery or upon whose land it is located, nor need it specify the county of residence of the maker. The law requires that the contract shall be executed and attested in the same manner as mortgages on personal property, and recorded within thirty days from its date, in the county where the vendee resides, if a resident of this State, and provides that in other respects it shall be governed by the laws relating to the registration of mortgages. Civil Code (1910), §§ 3318, 3319, 3307, 3257.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*

DECIDED SEPTEMBER 18, 1917. REHEARING DENIED SEPTEMBER 27, 1917.

Trover; from Fulton superior court—Judge Bell. May 6, 1916.

In June, 1910, the Continental Gin Company sold to J. C. and James Council certain machinery, taking purchase-money notes containing the following provisions: "This note given in part payment for the following machinery sold to the undersigned by Continental Gin Company, viz.: 3 70 saw R. H. Winship plain gins; 3 70 saw class C feeders; 1 210 saw condenser with support and flues, 1 20 saw lint flue; 1 30 inch cylinder D. B. steam power press with transfer and feedings; 1 10 inch class C elevator, as per contract; shafting, pulleys, and belting as per contract. It is expressly understood and agreed by and between the holder and

maker of this note that the title and ownership of said machinery for which this note is given shall remain in the said Continental Gin Company or owner of this note, until this note and all other installment notes, or any renewals thereof, shall be paid in full." The notes were indorsed by the McRae Oil & Fertilizer Company. The makers were residents of Telfair county, and the notes were there recorded. J. C. and James Council kept and operated the ginning outfit during the season of 1910-11 on premises in Telfair county owned by the McRae Oil & Fertilizer Company. After the close of the season that company, without authority of the Councils, took possession of the ginning outfit, and subsequently sold the "land upon which the gin machinery in litigation was located" to the Telfair Fertilizer Company, conveying it by deed dated January 10, 1912. The latter company conveyed the land to the Empire Cotton Oil Company by a deed dated June 22, 1912, in which was included: "all other property, both real and personal, which the party of the first part owns, of every character whatsoever, and wherever the same may be situated, used in connection with or belonging to the oil and fertilizer business or ginneries of the party of the first part, except its cash, notes and accounts receivable and other choses in action, the raw material, manufactured products, and supplies on hand, not used in the operation of said oil and fertilizer or other plants." The Continental Gin Company brought suit in trover against the Empire Cotton Oil Company for the machinery, and recovered therein, and the defendant moved for a new trial, which was refused, and it excepted. The only ground of the motion besides the general grounds, that the verdict is contrary to law and to the evidence, etc., was the ground that the court erred in admitting in evidence the purchase-money notes containing the reservation of title, for the reason that "they did not state the locality of nor upon whose land said machinery was located, whether in Telfair county or elsewhere; that the description of the machinery as set out in the notes was insufficient to describe the machinery, and insufficient to put any one on notice of plaintiff's claim thereto; and that the notes do not specify the residence of Messrs. J. C. and James Council, the makers of the notes or contracts."

*King & Spalding, Anderson & Rountree,* for plaintiff in error.
*R. L. J. & S. J. Smith, E. M. & G. F. Mitchell,* contra.

2

### ON MOTION FOR NEW HEARING.

JENKINS, J.   It is contended by counsel for the plaintiff in error, both in their original brief and in their motion for rehearing, that the machinery involved in this suit was intended to be and actually was attached to land, thereby becoming fixtures, and that therefore the vendor of the machinery could not, by reason of having reserved title to it, recover it from the owner of the land,— the plaintiff in error,—which, without actual knowledge of such reservation of title, bought the land from the company to which the McRae Fertilizer Company, the lessor of the premises to the purchasers of the machinery, had sold the land.   Section 6142 of the Civil Code of 1910 provides: "When a party desires to review the judgment of the court in granting or refusing a new trial, the plaintiff in error shall specifically set out the errors complained of."   The only assignment of error which it would seem, under any view, might be taken as covering the point here mentioned is the general ground, contained in the motion for a new trial, that the verdict is "contrary to law."   Under the rulings made by the Supreme Court, such an assignment presents nothing for the decision of the appellate court.   *Napier* v. *Burkett,* 113 *Ga.* 607 (38 S. E. 941) ; *Roberts* v. *Keeler,* 111 *Ga.* 181 (36 S. E. 617).   See also Civil Code (1910), § 6203; *McKelvin* v. *State,* 17 *Ga. App.* 413 (87 S. E. 150).   But, apart from this, we do not think the evidence required the jury to find that the machinery had become a part of the realty.   It is clear that such was not the intention of the vendor or his vendee, since by the terms of the sale the title to the machinery was to remain in the vendor until the purchase money was paid.   The McRae Oil & Fertilizer Company, who the plaintiff in error contends was the owner of the land to which the machinery became affixed and was the lessor of the vendee of the machinery, became a party to this contract by its indorsement of the note.   Section 3621 of the Civil Code of 1910 declares that "Anything intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it.   Machinery, not actually attached, but movable at pleasure, is not a part of the realty."   This provision of law does not, however, always provide a certain and easy test by which it can be determined in a given case whether or not the article in question remains personalty, or

is attached to the realty and a part thereof. In *Smith* v. *Odom,* 63 *Ga.* 499 (2), it was said: "Prima facie, the running-gear of a gin, in position for use, and attached to the gin-house, .is a fixture and passes with the land. The gin, proper, is personalty, and does not pass without express agreement or something equivalent. The same is true of the band. But to treat all these things as fixtures, or on the other hand as personalty, is not inconsistent with an absolute deed conveying the land and appurtenances, if the true intention of the parties can be obtained from the res gestæ of the contract. Where there is doubt or uncertainty, the jury, and not the court, should determine the question of intention." See also *Power* v. *Garrison,* 141 *Ga.* 429 (81 S. E. 225); *Pendley Brick Co.* v. *Hardwick,* 6 *Ga. App.* 114 (64 S. E. 664). In the present case the machinery included no engine or boiler, and nothing was imbedded in brick or wood or attached in a permanent manner to the walls; but the gins were merely screwed to the floor on one side, and the shafting and pulleys on the other, and the other things were not fastened. If the shafting and pulleys were to be considered part of the running-gear, any presumption that they were intended to be part of the land was, in the minds of the jury, rebutted by the circumstances of this case, including the original intent of the parties. Is the case altered by the fact that the lessor of the premises to the purchasers of the machinery sold the land to another company, and that the vendee of the land in turn conveyed the premises, with a clause specifically including the machinery, to the plaintiff in error, which claims as an innocent purchaser, not shown to have had actual knowledge of the rights of the vendor of the machinery under a duly recorded reservation of title? Assuming, as we do, that the jury were authorized to find that the machinery had not become a part of the realty, but retained its character of personalty, the sale of the realty first by the lessor of the premises, and then by the lessor's vendee, could not affect the rights of the plaintiff under the plaintiff's duly recorded reservation of title to the machinery. Were a contrary assumption to be made as to the character of the machinery, and were it to be treated, under the evidence, as having been affixed to the realty so as to become a part thereof, then there is abundant authority for holding that a vendee of the premises, without notice, would be unaffected by the reservation.

Appended to the report of the case of Reynolds *v.* Ashby, considered and determined by the House of Lords, in 1 B. R. C., 653, there is an exhaustive note in which the rulings of American courts are considered, and on page 665 of this annotation the writer says: "With a single exception, it seems to have been unanimously held in the United States that the rights of a purchaser of the realty without notice of the claim of the seller of fixtures are unaffected by the latter's retention of title thereto, or reservation of a right to retake them upon default in payment of the purchase price." Numerous cases supporting this view are then cited, with the following comment: "A reason sometimes given why a bona fide purchaser of realty will obtain good title to fixtures notwithstanding an agreement made by the person installing them that title thereto should be retained by the seller until payment of the purchase price is that, as the seller agrees that the fixtures shall be converted in all outward appearance into real property, he assumes the risk of their being sold as such, and it would be contrary to justice to allow the seller to save himself by casting the consequences upon the purchaser of the realty." As stated by this writer, "Correlatively, where the grantee of the realty takes with notice of the rights of the seller of fixtures, such rights may be asserted against him. This doctrine is usually stated with the qualification that the property must be susceptible of retaining the character of personalty, and not become merged with the realty by incorporation therewith, as in the familiar instance of materials which have become part of the house. Or as it is sometimes otherwise put, the property must be removable without material injury to the realty or to itself." As to the effect of legal notice of such a reservation this writer says: "The difference of judicial opinion which marks nearly every phase of the subject under discussion also exists upon the question how far the filing of a chattel mortgage or contract of conditional sale is sufficient to charge intending purchasers or encumbrancers of the realty with notice." That it will have such effect is held in numerous cases there cited, but the contrary view is announced by many of the courts of this country. See Tippett *v.* Barham, 180 Fed. 76 (103 C. C. A. 430), as reported in 37 L. R. A. (N. S.) 119, and the note appended. While we are inclined to think the view first stated is founded upon better rea-

son and supported with better-considered authority, still, as will be seen from what we have already stated, it is not necessary that this question should be determined so far as this case is concerned, as the jury were authorized to find that the machinery had altogether retained its character of personalty; and it is therefore not necessary to consider whether, treating it as a fixture removable without material injury to the realty, it could be claimed by its vendor, which had given legal notice of a reservation of title. There are other contentions made by the defendant in error growing out of the evidence, which, though of seeming merit, we do not think it necessary to state and consider. The motion for rehearing, upon consideration of all of its grounds, is denied.