### 15877. INTERNATIONAL CLAY MACHINERY COMPANY *v.* MOULTRIE BANKING COMPANY.

STEPHENS, J. 1. Where personal property is sold under a contract whereby the title thereto is retained and the property is subject to the seller's order until the purchase-price has been fully paid, and the right is reserved in the seller to remove and retake the property on default as to payment of the purchase-money, and where the property is afterwards, even with the consent of the seller, installed by the purchaser in a building upon land belonging to the purchaser, in such a manner as to become attached as a part of the realty, the seller's title retained therein is not, by reason of such annexation to the realty, lost or forfeited to a pre-existing mortgagee of the land, if the property attached has not lost its identity and can be detached from the realty without essential injury to the value of the freehold as it would have stood had the attachment not been made. This ruling is in accordance with the weight of authority prevailing in America. *Wade* v. *Johnston,* 25 *Ga.* 331; *Campbell* v. *Roddy,* 44 N. J. Eq. 244 (6 Am. St. R. 889); *Holt* v. *Henley,* 232 U. S. 637; *Detroit Steel Cooperage Co.* v. *Sisterville Brewery Co.,* 233 U. S. 712; 26 C. J. 684 et seq.; 13 Am. & Eng. Enc. of Law (2d ed.) 630 et seq.; 37 L. R. A. (N. S.) 119 (note); 19 Cyc. 1051 et seq.; 13 A. L. R. 448 (note); 1 B. R. C. 664 (note). The ruling here made is distinguishable from that of the United States Circuit Court of Appeals, fifth circuit, in *Schofield's Sons Co.* v. *Citizens' Bank of Moultrie,* 2 Fed. (3d series) 129, which holds that in this State a contract retaining title in the seller of personalty which afterwards becomes attached to the realty does not prevail as against a pre-existing mortgagee, since the property sold became "an essential and indispensable part of the completed structure contemplated by the mortgagee."

2. Such an agreement retaining title in the seller to personal property sold prevails as against a subsequent purchaser of the land, including a purchaser at a judicial sale, with notice of the agreement; and a failure of the purchaser to deliver the personalty to the seller on demand constitutes a conversion for which trover will lie. Constructive notice by virtue of the record of the retention-of-title contract is sufficient; but in order to constitute constructive notice to the purchaser of the realty, the personalty attached must have retained its identity and be capable of identification. 26 C. J. 681, 683, 734; 13 Am. & Eng. Enc. of Law (2d ed.) 624, 627, 630, 679; 19 Cyc. 1074; 38 Cyc. 2016; dictum in the case of *Empire Cotton Oil Co.* v. *Continental Gin Co.,* 21 *Ga. App.* 16, 20 (93 S. E. 525), and citations supra.

3. In a suit in trover by the seller of the personalty, who had retained title thereto, against the pre-existing mortgagee of the land, who afterwards purchased the land at a judicial sale, with constructive notice from the record of the plaintiff's retention of title to the personalty sold, although at the time of the purchase of the land by the defendant the personalty was attached thereto as a part of the realty, where the evidence authorized the inference that the personalty sold had not lost its identity and could be detached from the realty without injury to the remaining property, and the defendant had refused to deliver it

to the plaintiff on demand, a verdict for the plaintiff would have been authorized, and the court erred in directing a verdict for the defendant.

4. It was harmless to the plaintiff to admit the evidence objected to in the amendment to the motion for a new trial, tending to establish the defendant as a pre-existing mortgagee and as a subsequent purchaser of the land.

*Judgment reversed. Jenkins, P. J., concurs. Bell, J., disqualified.*

DECIDED OCTOBER 2, 1925.

Trover; from Colquitt superior court—Judge W. E. Thomas. October 30, 1924.

STATEMENT OF FACTS BY STEPHENS, J.

The International Clay Machinery Company sold to the Ladson Brick and Tile Company certain personalty described as "one type disintegrator as illustrated and described on bulletin No. 57" and weighing approximately 3300 pounds, and "one type 220 smooth roll crusher as illustrated and described on bulletin No. 58," described as weighing approximately 4200 pounds, for the sum of $1100, and retained title thereto under a contract which was duly recorded on April 22, 1922. The contract provides that the articles sold "are to remain the property and subject to the order of the International Clay Machinery Company until paid for in full, and that if promissory notes are given for said sum in payment thereof or thereon, it shall not divest the said International Clay Machinery Company of the title until all such promissory notes are paid in full, nor shall any payment on account and receipt therefor divest them of such title until all sums are fully paid; and in default of payment as above agreed, you or your agent may take possession of and remove said articles without legal process." The property thus sold was installed by the Ladson Brick and Tile Company in a brick plant upon certain land which the Ladson Brick and Tile Company at the time held under a bond for title from one W. L. Culberson, which bond for title the Ladson Brick and Tile Company had transferred to the Moultrie Banking Company by a transfer executed July 30, 1921, and admitted to record March 27, 1922.

It thus appears that, at the time of the sale of the personalty by the International Clay Machinery Company to the Ladson Brick and Tile Company, the Moultrie Banking Company was to all intents and purposes a pre-existing mortgagee of the land upon which the personalty was installed. The Moultrie Banking Com-

pany afterwards paid the outstanding indebtedness of the Ladson Brick and Tile Company to W. L. Culberson and took a deed to the property from Culberson in consideration of $12,500, which deed was executed December 19, 1922, and recorded January 22, 1923. The Ladson Brick and Tile Company afterwards became a bankrupt, and the Moultrie Banking Company, at a receiver's sale, bought the property for the sum of $10,000 under a deed executed May 29, 1923, and recorded August 21, 1923.

The International Clay Machinery Company, after having demanded the disintegrator and crusher of the Moultrie Banking Company, and after the latter's refusal to deliver the same, brought trover against the Moultrie Banking Company to recover the property. The defendant denied the plaintiff's title, contending that the personalty, after its sale to the Ladson Brick and Tile Company, had, by its installation upon the land of the Ladson Brick and Tile Company, become a part of the realty, and that the title thereto had passed to the defendant as part of the realty.

The above-described documents were admitted in evidence. The following also appears from the evidence: W. W. Nace, a witness for the defendant, after testifying that he was "familiar with the type 220 crusher and 205 disintegrator installed as a part of the plant at this time, placed on a framework on brick machine, wooden base, bolted or nailed to the framework of the building," testified as follows: "I think the plant can be operated if you take this machinery out. The clay goes into the disintegrator first; this forces the clay into the crusher, which sets over the brick machine. This machinery is connected with the balance of the machinery. The brickwork sets on the foundation, and there is a framework that the pulp-mill sets on. The disintegrator is right over the pulp-machine bolted on the framework. The clay goes into the disintegrator first and then into the pulp-mill. The disintegrator is on top of the pulp-mill, bolted to it. After the clay goes from the pulp-mill into the crusher it then goes into the brick machine. The crusher sets right over the brick machine and is bolted. This machinery is an essential part of this plant. Some plants operate without this machinery. The way this plant is operated and put up, this machinery is an essential part of this mill. The mill could be operated without the disintegrator. The taking out of the disintegrator and roll-crusher would not stop the operation of

this plant, but it would not make as good brick. The building in which the machinery is situated is about fifty by seventy-five or one hundred feet square. This crusher and disintegrator is one of the main items put together by bolts and screws on framework. You could take them away without harm to the other machinery. You could take them away without harm to the building. The plant could be operated without the crusher and without the disintegrator. In order to make brick, the clay has to be crushed up, and you can make better these machines in there. You can make some brick without any machinery at all, by hand. While you could make brick without the disintegrator or crusher the plant could not be very well operated without the pulp-mill. The pulp-mill sets right over the brick machine, and it is all connected together on framework."

M. L. Lee, a witness for the defendant, testified: "The brick machine is fastened onto a concrete foundation. The machine that is next to the brick machine is fastened to the brick machine and the posts supporting the brick machine. Over that is the third machine, which is the other machine that is involved in this suit. All other machines are connected with the framework set into the ground. The machines sued for are bolted to the building."

The court directed a verdict for the defendant. The plaintiff moved for a new trial, excepting to the direction of a verdict and to the admission in evidence of certain of the above-mentioned documents tending to establish the defendant as a pre-existing mortgagee and as a subsequent purchaser of the land.

*Lippitt & Burt,* for plaintiff.
*Kline & Moore,* for defendant.