20194.   SKINNER *et al. v.* STEWART PLUMBING COMPANY

Decided September 8, 1930. Rehearing denied October 1, 1930.

*Ralph Williams, Jones, Evins, Powers & Jones,* for plaintiffs in error.

*Levi O'Steen,* contra.

Bell, J. Stewart Plumbing Company sold to A. A. Mathis a bath-tub, a lavatory, and a water-closet combination, with fittings, —in other words, a set of bath-room fixtures,—with the understanding that they were. to be used by the purchaser in a residence owned by him in Fulton county, but that they were not to be removed without the consent of the vendor, and that the title was to remain in the vendor until the full payment of the purchase-money. The contract was in writing and was duly executed and attested, and was recorded in Fulton county as a chattel mortgage. After the execution and record of this instrument and the installation of the fixtures, the title to the dwelling-house passed by mesne conveyances from Mathis to Susie M. and Henrietta T. Skinner, who purchased the property in good faith, without actual notice of such agreement, and also without constructive notice unless this resulted from the record of the agreement "as a chattel mortgage only," since there was "nothing of record on the land records of Fulton county to indicate the existence of such contract." Mathis failed to pay for the fixtures and Stewart Plumbing Company brought in the municipal court of Atlanta a trover suit against Susie M. and Henrietta T. Skinner, for their recovery. Upon an agreed statement of facts there was a judgment for the plaintiff, which the appellate division of the municipal court and the superior court respectively affirmed; and the defendants have brought the case to this court for review. The agreed statement contained the following stipulations in addition to the facts set out above: "While the above-described fixtures were installed in the house located on said property in such a manner that but for the said

title-retention contract they would have become a part of the real estate, they did not by such installation lose their identity, but, on the contrary, are detachable fixtures, which could be removed [without?] materially injuring the value of the real estate as it would have stood had such attachment never been made, and without materially injuring their own value." The defendants-purchased the real estate "believing that said fixtures were incidents and appurtenances to said real estate and a part thereof, as they appeared to be, and that they would pass with a conveyance of the real estate."

In our opinion the judgment is erroneous and should be reversed. In *Cunningham* v. *Cureton,* 96 *Ga.* 489 (4), 492 (23 S. E. 420), the Supreme Court held: "Where land is conveyed, whatever fixtures are annexed to the realty at the time of the conveyance pass with the estate to the vendee, unless there be some express provision to the contrary; and fixtures pass to a bona fide purchaser of the real estate, notwithstanding an agreement between the owner of the land and the vendor of the fixtures that they should remain personal property." The present controversy is between the vendor of the fixtures and subsequent purchasers of the real estate to which they were attached; and the decisions which merely hold that an agreement to treat such fixtures as personalty is valid and enforceable between the parties are not in point. Compare *Power* v. *Garrison,* 141 *Ga.* 429 (81 S. E. 225) ; *Columbus Heating &c. Co.* v. *Burt,* 166 *Ga.* 158 (142 S. E. 551) ; *Wofford Oil Co.* v. *Weems-Fuller Co.,* 166 *Ga.* 173, 175 (3) (142 S. E. 887). The question here is mainly one of notice, and, more specifically, is whether under the particular facts stated the record of the retention-of-title contract as a chattel mortgage operated as constructive notice of the agreement. If so, the judgment was right; otherwise, not. Upon this question there is a hopeless conflict of authority, but, in the opinion of this court, it should be answered in the negative. The seller by a record which in law is applicable only to personalty is seeking to burden that which by his consent apparently became realty, and justice and reason would both argue that as to purchasers acting in good faith and without actual notice the property should be treated as what it appears to be, unless there is some recorded encumbrance *upon the land* such as would amount to constructive notice.

It so happens in the instant case that Mathis, the vendee of the fixtures, resided in Fulton county, in which the land was located; and therefore the record of the conditional sale was in the same office where papers affecting the title to the land would properly have been recorded; but had he lived in some other county in this State, the contract should have been recorded in that county, and, perhaps, also in the county where the property was situated, if in a different county; whereas mortgages or liens affecting the title to the real estate should have been recorded only in the county of Fulton, where the real estate was located. Civil Code (1910), §§ 3259, 3319; *Reynolds Banking Co.* v. *Peebles*, 142 Ga. 615, 616 (83 S. E. 229); *Atkinson* v. *Brunswick-Balke-Collender Co.*, 144 Ga. 694 (87 S. E. 891); *Grady Trading Co.* v. *Ireland*, 29 Ga. App. 172 (114 S. E. 86); *Farmer* v. *Phillips*, 12 Ga. App. 732 (2) (78 S. E. 353). It would be unreasonable to require that a purchaser should examine the records in the various counties in which the several prior owners of real estate may have resided, in order to determine whether any such owner had placed an encumbrance upon some fixture located upon the property in such manner as to become apparently a part of the real estate. The statutes of this State do not appear to require that mortgages on personalty shall be recorded in a different book from mortgages on realty (Civil Code of 1910, §§ 4891 (6), 4892 (8, 9)); but this court will take judicial cognizance of the custom of the clerks to keep separate records of such mortgages; and the stipulation in this case, to the effect that there was "nothing of record on the land records of Fulton county," indicates that the custom to which we have just referred is of force in the office of the clerk of the superior court of Fulton county. However, the distinction as to the county or counties in which mortgages on personalty and those on realty shall be recorded, respectively, is of far more importance than any practice (whether resulting from common consent or from statutory requirement) merely to record them in separate books, since it shows a legislative recognition that the two classes of mortgages are inherently different, and thus that the record of a mortgage on personalty could not be taken as constructive notice of a lien upon realty, although it may happen in a given case that a mortgage on personalty is properly recorded in the county where the land is situated. The paper here under consideration was a conditional

sale, but the rule as to record is the same as in case of chattel mortgages. Civil Code (1910), § 3319. The vendor in this case occupies the inconsistent position of reserving the title to personalty and of recording his claim upon the property as such, and of consenting at the same time that the property shall assume the appearance of realty, and in fact become realty, except for the purpose of his own special agreement. He has thus made it possible for his vendee to do injury to others by selling the property, and his conduct is subject to the equitable rule that "when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss." Civil Code (1910), § 4537.

The following are some of the authorities bearing upon the question under consideration:. Case Mfg. Co. v. Garven, 45 Ohio St. 289 (13 N. E. 493) ; Phillips v. Newson (Texas Civ. App.) 179 S. W. 1123; Elliott v. Hudson, 18 Cal. App. 642 (124 Pac. 103) ; Ice &c. Co. v. Lone Star Engine &c. Works, 15 Tex. Civil App. 694 (41 S. W. 835) ; Hopewell v. Savings Bank, 150 Mass. 519 (23 N. E. 327) ; Tibbetts v. Horne, 65 N. H. 242 (23 Atl. 145, 15 L. R. A. 56, 23 Am. St. R. 31) ; Brennan v. Whittaker, 15 Ohio St. 446; Union Bank & Trust Co. v. Wolf, 114 Tenn. 255 (86 S. W. 310, 108 Am. St. R. 903, 4 Ann. Cas. 1070) ; Beatrice Creamery Co. v. Sylvester, 65 Colo. 569 (179 Pac. 154, 13 A. L. R. 441, see p. 484) ; Liddell Co. v. Cork, 120 S. C. 481 (113 S. E. 327, 23 A. L. R. 800, and note). See also 26 C. J. 683; 13 Am. & Eng. Enc. Law (2d. ed.), 630. Every case of this sort should at last be determined upon its own facts, and, remember, the present case is one in regard to *bath fixtures,*—a kind of property that usually passes with the real estate as an accession thereto; and besides, the stipulation is, not that the fixtures were prima facie a part of the realty, but that they were so located thereon as to become actually a part of the same "but for the said title-retention contract," although they did not by installation lose their identity, but on the contrary were detachable and could be removed without materially injuring their own value or that of the real estate. Is not the present case distinguishable from those cases involving the title to or a lien upon certain types of machinery or other property more "susceptible of retaining the character of personalty?" Compare *Empire Cotton Oil Co.* v. *Continental Gin Co.,* 21 *Ga. App.* 16

(93 S. E. 525); *International Clay Machinery Co.*, v. *Moultrie Banking Co.*, 34 *Ga. App.* 396 (129 S. E. 877). "It is a matter of common knowledge that sawmills, ginning outfits, and similar machinery, are frequently, if not generally, sold on time and under agreements reserving title in the seller until paid for. The presence of such fixtures in quantity should put a prospective purchaser of the land upon inquiry as to their history." Liddell Co. v. Cork, supra. Quite obviously the same could not be said of bath fixtures, and apparently the rules should be different as regards the two classes of property.

As to what form of security the vendor of such fixtures should obtain for his protection, we do not undertake to say, but upon this question we quote from Tibbetts *v.* Horne, 65 N. H. 242 (13 L. R. A. 56), supra, as follows: "The defendant . . should have taken a mortgage of the land, or other security consistent with the safety intended to be given to innocent purchasers by the registry law. By taking no mortgage of the realty of which, with his assent, the machinery became an apparent part, he gave Waterhouse and Frost apparent authority to convey the machinery as realty. The purpose of the registry law would be defeated if the county record could not be relied upon in such a case by a subsequent purchaser having no notice of a defect in the apparent title. The town record not being constructive notice of such a defect, the defendant's chattel mortgage became a secret claim, when the annexation of the machinery to the land had referred all inquirers to the registry of land titles for information."

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

ON MOTION FOR REHEARING.

It appears from the record that the seller, Stewart Plumbing Company, not only took from the purchaser, Mathis, a contract reserving to itself the title to the fixtures pending payment of the purchase-money, but that it also filed and had recorded a materialman's lien upon the real estate, based upon the sale and installation of the fixtures. It is contended, in the motion for a rehearing filed by the plumbing company, that we overlooked the facts touching the filing and recording of such lien, and also that we erred in not holding that these facts, under the principle of section 4530 of the Civil Code· (1910), could have been taken by the trial court as sufficient to charge the purchaser of the real estate with notice of

the title to the fixtures as retained by the plumbing company. We did not overlook the facts referred to; but the filing and recording of a lien based upon the furnishing of the fixtures tended rather to indicate that the *title* thereto passed to the owner of the real estate improved thereby, although credit was extended therefor, and did not suggest in the slightest degree that the title to the fixtures had been retained by the seller thereof.

It is further contended that we overlooked the case of *Williams* v. *Ideal Plumbing Co.*, 41 *Ga. App.* 607 (154 S. E. 212), and that upon an application of the principles ruled in that case a different judgment would be required in the present case. It is true that we overlooked the *Williams* case; but we have now made a careful consideration of both the record and the decision in that case, and can not agree that our decision in the present case is at all in conflict with anything held in the *Williams* case. In that case no question was raised as to whether the record of the conditional-sale agreement as an instrument pertaining to a chattel would operate as constructive notice of such agreement, but, as stated in the opinion, "the controlling questions were whether the fixtures, after becoming attached to the realty, had lost their identity, and whether they could be detached from the realty without material injury to the realty." Furthermore, it appears in the record in the *Williams* case that the fixtures were sold and installed after the owner of the building had executed to Williams a security deed to the real estate. Williams subsequently foreclosed the loan deed and bought in the property at the foreclosure sale. The facts, therefore, were materially different from those of the case at bar. Upon a like variation in the facts, we might also have distinguished the case of *International Clay Machinery Co.* v. *Moultrie Banking Co.*, 34 *Ga. App.* 396 (129 S. E. 877); but this was not necessary, in view of the different character of the property involved in that case. See, in this connection, *Conder* v. *Holleman*, 71 *Ga.* 93 (1); *American Law Book Co.* v. *Brunswick C. & C. Co.*, 12 *Ga. App.* 259 (77 S. E. 104); Beatrice Creamery Co. *v.* Sylvester, 65 Colo. 569 (179 Pac. 154, 13 A. L. R. 441). We did not overlook the case of *Empire Cotton Oil Co.* v. *Continental Gin Co.*, 21 *Ga. App.* 16 (93 S. E. 525); but cited and distinguished that case.

As to the other grounds of the motion for rehearing, we deem it unnecessary to add to or amplify what was said in the original

opinion. But, as further illustrating the statement then made, that every case of this kind should stand upon its own particular facts, see Case Mfg. Co. *v.* Garven, 45 Ohio St. 289 (13 N. E. 493); Hopewell Mills *v.* Savings Bank, 150 Mass. 519 (23 N. E. 327, 6 L. R. A. 249, 15 Am. St. R. 235).    *Rehearing denied.*