27581. FARRELL *et al. v.* ATLANTA GAS-LIGHT CO.

Decided October 11, 1939. Rehearing denied November 13, 1939.

*McElreath, Scott, Duckworth & DuVall,* for plaintiffs in error.
*Alston, Foster, Moise & Sibley,* contra.

Felton, J.  The Atlanta Gas-Light Company sued Mr. and
Mrs. Wm. E. Farrell in trover for conversion of a No. 3 Janitrol
gas burner.  Judgment for the plaintiff was rendered by the judge
of the municipal court of Atlanta, trying the case without a jury.
The appellate division of the court affirmed his judgment denying
a new trial, and the defendants excepted.  Part of the facts were
agreed on, as follows: "R. C. Hunt, at the time of the sale to him
and the installation of a certain J-3 Janitrol burner at No. 169
Seventeenth Street N. E., was residing at 169 Seventeenth Street
N. E., in the City of Atlanta, Fulton County, Georgia.  At the
time he was a tenant renting the aforesaid premises from Joseph
L. Morrison.  Joseph L. Morrison, the landlord of Hunt, had ex-
ecuted a loan deed to the Travelers Insurance Company on or about
April 16, 1929, which said loan deed conveyed the premises at No.
169 Seventeenth Street N. E., in Atlanta, Fulton County, as se-
curity for the indebtedness due to the Travelers Insurance Com-
pany.  This loan deed was duly recorded in the office of the clerk
of the superior court of Fulton County, Georgia, in book 1229,
page 174, of said clerk's records, in April, 1929.  Joseph L. Mor-
rison became in default in the indebtedness due by him to the
Travelers Insurance Company in the year 1937, and the Travelers
Insurance Company, pursuant to the powers in the aforesaid loan
deed, advertised that property for sale and bought the same in,
and received a deed from Joseph L. Morrison through itself as at-
torney in fact for the said Joseph L. Morrison to the Travelers
Insurance Company.  At the time of the sale of the property to
defendants the premises were vacant.  In March of 1938 the Trav-
elers Insurance Company sold the aforesaid premises to William
E. Farrell and Mrs. William E. Farrell as tenants in common,
and since the date of said conveyance the said William E. Farrell

and Mrs. William E. Farrell, the defendants in this cause, have continued to occupy the premises. Neither the Travelers Insurance Company nor the defendants in this cause had any actual knowledge of the rental agreement set forth in paragraph 2 of the petition in this matter, although the same was recorded in the office of the clerk of the superior court of Fulton County, Georgia, as therein set forth."

I. P. Shattles testified for the plaintiff: "I am an employee of the Atlanta Gas-Light Company, and am familiar with the Janitrol burner, the subject-matter of this suit, which is located at 169 Seventeenth Street N. E. This burner was installed in the furnace which was already in the residence, by removing the grates and removing the ash-pit door therefrom, which just came off the hinges. The burner was then slipped in at the ash-pit door and secured in the furnace without being attached in any way, and the gas line extended from the meter to the outside of the burner located outside the furnace, and the burner-box about fourteen inches wide and three inches deep extends through the ash-pit door opening; and on the outside of the furnace certain valves and controls, also part of the burner and at the end of the burner-box, were attached to said gas line. The space around the burner-box in the ash-pit door was sealed by placing around the burner-box brick and refractory cement. This refractory cement is not mortar, but a special cement which will withstand heat. There was located somewhere in the residence upstairs a thermostat which was connected to the valves by means of a cable extending through the wall from the basement to the upstairs. This burner can be easily removed. You take out the brick and refractory cement by light tap of hammer or chisel, and pull out the bricks; then disconnect the gas line which extends from the meter to the burner; then take the burner out through the ash-pit door after removal of the bricks and refractory cement. This will not injure the furnace, and the same can be put in its original condition by replacing the original grates and ash-pit door. I am familiar with the market values of such burners, and the reasonable value of this burner at the present time is between $108 and $110." B. Y. Yancey testified for the plaintiff that the burner was worth between $108 and $110.

The contentions of the defendant are: (1) That the record of

the rental agreement or retention-of-title contract (it is immaterial which), executed by one who was not a party to the chain of title to the real estate, is not binding on or constructive notice to a purchaser of the real estate; and that since there was no actual knowledge, the purchaser of the real estate got a good title to the burner. (2) That the burner became part of the realty. It was agreed that there was no actual knowledge of the agreement. A valid agreement may be made between the owner of real estate and the seller of a fixture, to the effect that the fixture is to be considered personal property, and that the title thereto is to remain in the seller as to all parties until paid for, even where without such agreement the fixture when attached to the realty becomes a part thereof and not removable as personalty, provided the fixture may be removed without injury to the realty. Likewise, such an agreement is valid when from evidence the finding is demanded or authorized that the fixture, though attached to the realty, never becomes a part thereof. It is well not to confuse the two cases. This case, as we see it, comes under the premise first stated. The nature of the fixture, the intention of permanent use in the ordinary course of events, demands the conclusion that it became a part of the realty, even though it could be detached without injury to the realty. The only part which the possibility of detachment without injury plays in these cases is the drawing of the line of distinction beyond which the owner may not stipulate, so far as third parties are concerned, that realty shall be considered personalty. If the fixture or material becomes realty but may be detached without injury, the agreement that it shall remain personalty as to the parties concerned and those having notice is valid. If the fixture or material becomes realty and can not be detached without injury, then no agreement that it shall be considered personalty as to third parties is valid. It is plain that a retention-of-title agreement is valid if the property sold can legally be found never to have been realty. With this question we are not concerned here. In *Mayor &c. of Savannah* v. *Standard Fuel Supply Co.*, 151 *Ga.* 145 (106 S. E. 178, 13 A. L. R. 1451), it was held that paving stones laid by a tenant were not removable by him; and this in spite of the fact that their removal would leave the premises in the same condition as before they were laid. In *Cunningham* v. *Cureton*, 96 *Ga.* 489 (23 S. E. 420) it was held that moulders, placed in and at-

tached to a mill for a permanent use, became a part of the realty, although they were removable without injury. We think that the gas burner became as much a part of the realty as the furnace itself, or the plumbing fixtures in the house. The owner would have had no right to remove the burner if he had installed it. He could have given a valid retention-of-title contract for its purchase; and if it had been duly recorded the seller could have enforced its rights. The reason why an owner may make such a contract valid as against subsequent purchasers is that in view of his ownership he has the right to contract that the fixture, which under the law would immediately become realty upon being attached, would nevertheless remain personalty for a specified time for a specific purpose, and because the record of such agreement affords notice to purchasers of the agreement. *Lasch* v. *Columbus Heating & Ventilating Co.,* 174 *Ga.* 618 (163 S. E. 486).

The difficulty about this case is that the owner of the realty did not sign the agreement. In the case of the tenant's laying the stones, if the tenant has no right to remove them himself, may he contract with another that they may be removed? It would seem that a tenant would have no such right as against the owner of the property without his consent, or as against a mortgagee without his consent, or an innocent purchaser from either. It may be that a tenant would have such a right, if it is provided in a duly-recorded lease, as against a subsequent mortgagee or purchaser; but whatever rights he had would be derived from the owner. Such rights on the part of the tenant are tied up with the question of notice; and one controlling reason why a tenant's agreement that a fixture which would ordinarily become a part of the realty shall remain personalty is not valid is that it does not impart sufficient notice to the owner, mortgagees, or subsequent purchasers. In such a case it would seem that the equities in favor of the innocent purchaser would be overwhelming. It would seem that due diligence on the part of the seller of the fixture would require consent for removal from the owner and the mortgagee, and actual removal before the rights of innocent parties intervened, in the absence of record of such an agreement as would impart notice. Such an innocent purchaser should not be required to ascertain what tenants have occupied the property through the years, in order to ascertain whether peradventure some one of them had installed a fixture

upon his agreement that it might be removed if not paid for. A search of the records of realty and personalty titles and encumbrances as to the owners of the property would reveal no facts with reference to the contracts of the tenants. It is true here that the seller did all the law required, and from one view it would seem that it should be protected. However, it made the contract with one who had no authority in law to make it. The tenant certainly could not have made such an agreement concerning a brick chimney, or weatherboarding; and if he had, the seller would have been precluded from enforcing it, because it is contrary to law. So, here, the seller is charged with knowledge that a tenant has no implied authority to agree that what the law says shall be another's real property shall not be real property as to such other person. The only valid ground for such an agreement is that the fixture remained personalty and never did become the property of the owner. The case of *Empire Cotton-Oil Co.* v. *Continental Gin Co.*, 21 *Ga. App.* 16 (93 S. E. 525) was decided upon the theory that the property never did become realty. It was expressly stated that it was not then necessary to decide whether, treating the property as a fixture removable without injury, it could be claimed by the vendor. Other cases cited, in which the owner made the agreement, have no application here. Of course what is herein stated applies only to fixtures placed by a tenant upon property of another, where the seller consents thereto. Under the facts of the case the court erred in rendering judgment for the plaintiff. The evidence demanded a finding that the fixture became a part of the realty; and in the absence of any right on the part of a tenant to make such an agreement which would constitute notice to a purchaser of the realty, it was error to find for the plaintiff.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*