In re JANMAR, INC., Debtor.

John J. GOGER, Trustee and Plaintiff,

v.

UNITED STATES of America; Georgia Department of Revenue, Withholding Tax Section; Georgia Sales and Use Tax Unit, State of Georgia, Department of Revenue; State of Georgia Central Audit Unit; Georgia Department of Labor, Employment Security Agency; State of Georgia Income Tax Unit; Tax Commissioner, DeKalb County; Tax Commissioner, Butts County; Tax Commissioner, Clayton County; Tax Commissioner, Henry County; Tax Commissioner, Newton County; Jack W. Chancey; Swan Construction Company, Inc.; Bags by Frances, Inc.; Jo Swan; Evelyn Dickman; First Georgia Bank; C. J. Hulsey; David Gilchrist d/b/a Cap's Tavern; T. P. Stewart and Zack Hinton d/b/a SHP Economy Inn; Forest Kelly d/b/a Granny's-Kelly's Kitchen; John R. Mann; the People's Bank; Waffle House, Inc., Defendants.

Bankruptcy No. 79–03139A.
Adv. No. 79–0047A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Oct. 23, 1979. (Bankruptcy).
Dec. 10, 1979. (Adversary).

John J. Goger, Arrington, Rubin, Winter, Kirscher & Goger, Atlanta, Ga., for trustee and plaintiff.

Alvin L. Bridges, Jr., Dunaway, Haas, Broome, Hope & Bridges, Atlanta, Ga., for defendant Hulsey.

John E. Tomlinson, Jones, Tomlinson & Nix, Atlanta, Ga., for defendant Dickman.

James H. Rollins, Cofer, Beauchamp, Hawes & Brown, Robert G. Brazier, Atlanta, Ga., for defendants Gilchrist and Cap's Tavern, Ltd.

### STATEMENT OF CASE

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On October 23, 1979, the above-named debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 301. On December 10, 1979, the trustee and plaintiff in this action filed a complaint to sell certain property of the debtor free and clear of any liens. On that same day this Court ordered that all parties in interest show cause at a hearing on December 20, 1979, why the trustee should not be authorized to sell the property of the debtor pursuant to his complaint. The Court further ordered the named defendants and each party asserting a claim with respect to the described property to file a statement of such claim by December 17,

1979, to file a motion or an answer to the complaint by December 16, 1979, and to file any objections in writing, setting forth the grounds for the objection by December 16, 1979. The Court also ordered that notice of the hearing be given by mail to all parties in interest, including creditors.

On December 17, 1979, defendant C. J. Hulsey (hereinafter referred to as "Hulsey") filed his answer claiming a security interest in certain property of the debtor's estate. He also filed an objection to the sale free and clear of liens of the fixtures located at Forest Kelly d/b/a Granny's-Kelly's, Cherokee Road, Smyrna, Georgia, and SHP Economy Inn, Locust Grove, Georgia, the reason being that he (Hulsey) had a security interest in these fixtures which equaled or exceeded their value.

On December 20, 1979, defendants David Gilchrist and Cap's Tavern, Ltd. (hereinafter referred to as "Cap's") filed an answer. They stated that Cap's and the debtor had entered into a lease-purchase agreement regarding certain equipment and fixtures now claimed by the trustee; that under this agreement, Cap's was to pay pursuant to the lease-purchase contract $150.00 per month until the purchase of said property, at which time a portion of the lease payments would be applied against the purchase price. As of November 1979, Cap's had paid $1,050.00 under the lease and the lease was not in default.

Cap's further alleged in its answer that certain items of the leased equipment have been installed in the premises so that their removal will cause damage to the building. Cap's also alleged that certain other items of the leased equipment had been repaired and refurbished so that the value added to the equipment exceeds the value of the equipment in an unrepaired condition.

In the alternative Cap's contends that if the fixtures and equipment are removed from Cap's, the estate of the debtor will incur substantial liability to Cap's for damages and that these damages will exceed the value of the leased fixtures and equipment.

Cap's then requested that the trustee's complaint be dismissed, that the trustee be enjoined from removing the leased property and that the Court order the trustee to abandon the fixtures and equipment. On that same day, Evelyn Dickman filed an answer claiming a security interest in plaintiff's property.

On December 20, 1979, a pre-trial hearing on this complaint was held and an Order issued. The Court ordered that the estates of Janmar, Inc. and Julian H. Eady (the President and sole shareholder of Janmar, Inc.) were separate and distinct and were to be treated accordingly. The Court, *inter alia*, forbade the trustee to sell or remove the restaurant equipment concerning which objections had been filed by defendants Hulsey and Cap's.

On January 7, 1980, trial on the trustee's complaint was set for January 23, 1980.

On January 17, 1980, Cap's filed a motion for the abandonment of property, alleging that the fixtures and equipment were of inconsequential value or benefit to the debtor's estate, that value added to the equipment by Cap's in the form of repair and refurbishment exceeds the value of said property in an unrepaired state, and that the cost of removing the fixtures exceeds their value.

On January 22, 1980, the plaintiff filed a trial brief stating, essentially, that Hulsey had no security interest in the equipment he claimed because he filed U.C.C. financing statements in the counties in which the equipment was located rather than in the county of the principal business of Janmar, Inc.

On January 23, 1980, a trial on the complaint was held and additional briefs ordered. On February 4, 1980, Hulsey filed a brief in support of his position that the pieces of equipment in which he claimed a security interest were fixtures, and that because they were, his filing had been in the proper county. He also cited cases indicating that types of equipment similar to that in which he claimed an interest had been held to be fixtures.

On February 6, 1980, the trustee filed a supplemental trial brief. With this brief, the trustee tendered evidence showing that Janmar, Inc., not Julian Eady, owned the equipment in which Hulsey and Dickman claimed security interests; and that Dickman, having filed a financing statement in the name of Julian Eady, had not perfected her security interest.

The trustee also recapitulated testimony of Eady, Zack Hinton (a lessee of some of the restaurant equipment located at SHP Economy Inn in Locust Grove, Georgia) and David Arwood (a liquidator employed by the trustee to dispose of the property of the estate). All testified that with the exception of the property at Cap's, the property belonging to the estate could all be removed easily from its various locations and without damage to the buildings involved. This testimony was cited in support of the proposition that none of the property (except possibly at Cap's) had become fixtures.

The trustee's brief also reiterated testimony of David Arwood that the value of the equipment at Cap's was higher than the cost of removing walls and renovating them and that it had a "going concern" value of $2,000 and a distress sale value of $1,200. The trustee also claimed that Cap's, as lessee, was liable for the cost of renovation because it had compromised the mobility of the equipment.

The trustee then requested that he be allowed to sell all of the equipment which was the subject of the complaint, free and clear of any liens and that judgment in favor of the trustee be rendered against Cap's for $2,000 (the alleged value of the equipment).

On March 3, 1980, Cap's filed a supplemental brief in support of its motion for abandonment. Cap's stated that the permanent installation of the debtor's equipment had been made in good faith, with the knowledge of the debtor and with the understanding that it would not be removed. Cap's also argued that both § 554(a) and § 542(a) refer to "value" as the value of the property to the estate, not the fair market or going concern value. The value of the property as presently installed in Cap's premises, less the cost of renovation if borne by the trustee, is stated to be inconsequential, and thus abandonment is requested.

A. *Evelyn Dickman Security Interest*
FINDINGS OF FACT

1.

Janmar, Inc. was at all material times the owner of the personal property in which defendant Dickman claims a security interest.

2.

Defendant Dickman and Julian Eady entered into a security agreement under which a loan by the defendant to the debtor was to be secured by the personal property in question.

3.

The defendant filed a financing statement which bore and was indexed under the name of Julian Eady.

4.

The financing statement did not bear the name of the alleged debtor, Janmar, Inc.

CONCLUSIONS OF LAW

The evidence indicates that Janmar, Inc. was at all material times the owner of the property in which defendant Dickman claims a security interest. Mrs. Dickman claims to have perfected her alleged security agreement by filing a financing statement under the name Julian Eady. The trustee claims that failure to file a financing statement under the name Janmar, Inc. resulted in a failure to perfect her security agreement and results in the subordination of Mrs. Dickman's claim to the claim of the estate.

The Court agrees with the trustee. Ga.Code Ann. § 109A–9–402(1) states, in relevant part, "A financing statement is sufficient if it gives the names of the debtor and the secured party . . . ." The defendant here makes no allegation that the name of the alleged debtor, Janmar,

Inc., appears on the face of the financing statement. While courts have allowed some minor errors in the debtor's name in both the financing statement and the indexing of it, "the distinction drawn in the reported decisions is whether the name as it appears on the financing statement is only slightly different than the debtor's real name in which case parties searching the records would be placed on notice by such entry." *In re Firth*, 363 F.Supp. 369, 372 (M.D.Ga.1973) (footnote 5). The difficulty of finding a financing statement filed under "Eady" while searching for a filing under "J" is clear. Therefore, this Court finds that the financing statement filed by Mrs. Dickman was insufficient to perfect a security interest, and consequently her claim is subordinate to that of the trustee.

### B. *Hulsey Security Interest*
### FINDINGS OF FACT

1.

Defendant Hulsey entered into security agreements with the debtor by which certain property including counters, tables, updraft units, refrigeration units and sinks were to secure a loan from the defendant to the debtor.

2.

These properties were located on the premises of Dodge House No. 11 located at Locust Grove Road in Henry County, Georgia and a Dodge House located at 1022-18 Cherokee Road, Smyrna, Cobb County, Georgia.

3.

The principal place of business of Janmar, Inc. is located in DeKalb County, Georgia.

4.

The tables, counters and refrigeration units at the above locations were never intended to become fixtures.

5.

The updraft units and sinks at the above locations were intended to become fixtures.

### CONCLUSIONS OF LAW

The issue is whether fixture filings in Henry and Cobb Counties were sufficient to perfect Hulsey's alleged security interest in the tables, counters, updraft units, refrigeration units and sinks located on the premises of the restaurant buildings in these counties. The Court must consider the question of whether any of these various pieces of equipment have become fixtures. The trustee offered the testimony of Julian Eady, Hinton and Arwood that "the property belonging to the estate could be removed from its various locations easily and with no damage to the buildings involved" as determinative of the issue.

While one line of cases[1] indicates that the ease of removal is the determinative factor, these cases seem to be limited to the "machinery clause" of § 85-105 and are otherwise clearly out of the mainstream of Georgia law which looks to the intent of the parties.

In Georgia "anything intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it. Machinery, not actually attached, but movable at pleasure, is not a part of the realty. Anything detached from the realty becomes personalty instantly on being so detached." Ga.Code Ann. § 85-105.

The Georgia courts have held various items of personalty which could have been easily removed to be fixtures. See, e. g. *Pope v. Garrard*, 39 Ga. 471 (1869) (counters and drawers in a drug store); *Brigham v. Overstreet*, 128 Ga. 447, 57 S.E. 484 (1907) (counters, tables and large refrigerators in storehouse).

"[I]n Georgia . . . it is possible for a chattel to become a fixture with only minimal or constructive annexation to the realty . . . ." Ga.Reviser's Com-

---

1. *Wade v. Johnson*, 25 Ga. 331 (1858); *Sawyer v. Foremost Dairy Products, Inc.*, 179 Ga. 809, 177 S.E. 584 (1934); *International Clay Machinery Co. v. Moultrie Banking Co.*, 34 Ga.

App. 396, 129 S.E. 877 (1925); *Babson Credit Plan v. Cordele & Ass'n*, 146 Ga.App. 266, 246 S.E.2d 1354 (1978).

ment 3, Ga.Code Ann. § 109A–9–313. Thus it is clear that the difficulty or ease of the removal of property from the premises is not determinative of its status as a fixture *vel non.*

The determination of whether or not an object has become a fixture is generally governed by the intent of the parties and is based upon a variety of factors.

"Whether an article of personality connected with or attached to realty becomes a part of the realty, and therefore such a fixture that it cannot be removed therefrom, depends upon the circumstances under which the article was placed upon the realty, the uses to which it is adapted, and the parties who are at issue as to whether such an article is realty or detachable personalty." *Wolff v. Sampson*, 123 Ga. 400, 402, 51 S.E. 335, 335–336 (1905); *Consolidated Warehouse Co. v. Smith*, 55 Ga.App. 216, 189 S.E. 724 (1936). It is also the law in Georgia that this determination is a question of fact. *Babson Credit Plan v. Cordele & Ass'n*, 146 Ga.App. 266, 246 S.E.2d 1354 (1978). This Court finds from the weight of the evidence presented that the tables, counters and refrigeration units in question were never intended to be fixtures. Therefore, as to these items of property the fixture filings were inadequate to perfect a security interest and the trustee's claim is superior. However, as to the sinks and updraft units, the Court finds that they were intended to be permanently affixed to the realty and thus are fixtures. Therefore, the security interest of the defendant is perfected as to these items. Ga.Code Ann. § 109A–9–401(2).

### C. *Cap's Tavern*
### FINDINGS OF FACT

#### 1.

The property in question is property of the estate of Janmar, Inc.

#### 2.

The defendant Cap's and the debtor entered into a "use" only lease agreement.

#### 3.

The defendant installed the equipment on the premises of Cap's Tavern with the knowledge and, at least, tacit consent of the debtor.

### CONCLUSIONS OF LAW

Section 554(b) of the Bankruptcy Code, 11 U.S.C. § 554(b) provides that:

"On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate."

Defendant Cap's seeks an order from this Court requiring the trustee to abandon the leased property of the estate which remains in the defendant's possession.

This request brings the issue of abandonment before the Court in an unusual posture. The defendant here is not claiming that his equity in the property is so great that any equity remaining in the trustee is inconsequential. While the defendant has made allegations that he has a claim against the trustee for the value of improvements to property already turned over to the trustee, he has not pressed this claim or any claim of equity. He merely disputes the trustee's exercise of discretion with respect to the question of whether property of doubtful worth to the estate shall be abandoned. The permissive language of § 554(a) indicates the discretionary element in this decision:

"After notice and a hearing, the trustee *may* abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate." [emphasis added]

*Collier*, in describing § 554(a) and (b) states:

"Either the trustee or any other party in interest may apply to the court to approve or order an abandonment. This codifies practice under Bankruptcy Rule 608, which did not specify those entitled to request an abandonment." 4 *Collier on Bankruptcy* ¶ 554.02, pp. 554–9 (15th ed. 1979)

The language of Rule 608 is even more demonstrative of the discretionary aspect of the decision whether or not to abandon property.

> "The court may, on application or on its own initiative . . . *approve* the abandonment of any property . . ."

Bankruptcy Rule 608. [emphasis added] The use of the word "approve" is a strong indication that, at least under the former law, the power of abandonment is in the nature of a "trustee's power to pick and choose." 4A *Collier on Bankruptcy* ¶ 70.42, p. 500 (14th ed. 1978).

While the nature of the power of abandonment under the Act is not determinative of the effect of § 554 of the Code, it constitutes some evidence. At least one recent case under the Act characterized abandonment as "by leave of the court," *Riverside Memorial Mausoleum v. Umet Trust*, 469 F.Supp. 643, 645 (E.D.Pa.1979) indicating that the discretion of the trustee is bounded only by the discretion of the Court. Cases describing a "duty to abandon" have invariably been decided in situations in which the evidence clearly showed that the lien exceeded the value of the collateral and administration of the asset would cause expense to the estate. See, e. g. *In re Watts*, 19 F.2d 526 (E.D.La.1927). In the recent case of *In Re Loiselle*, 1 B.R. 74 (Bkrtcy. 1979) (Votolato, B. J.) the Court found as a premise prior to allowing the remedy of abandonment that the secured creditor and the trustee had reached an agreement to the effect that the creditor's lien exceeded the market value of the secured property and that there was no equity for the estate.

While no cases can be found under either the Code or the Act which precisely address this question, one commentator on the Code has said that the primary value of the right of other parties to request an abandonment order will be "where the trustee is willing to stipulate to such an order but, perhaps because of lack of assets in the estate, is unwilling to prepare it." Murphy, *Creditor's Rights in Bankruptcy*, § 4.12, p. 4–16 (1980). This Court is persuaded that Mr. Murphy's statement outlines the rationale underlying § 554(b): Generally, unless the trustee agrees to abandonment of a particular property of the estate, no order for such abandonment shall be issued at the request of a party in interest. Therefore, the defendant's request for abandonment is denied.

The demand for judgment of $2,000 against Cap's and in favor of the estate of Janmar, Inc. raises another question entirely. That question involves the scope of the duty imposed upon Cap's by the requirement of § 542(a) that it "deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The most significant statutory word applicable to the facts of this case is the word "deliver." The trustee claims that Cap's must either return the equipment itself or return in cash the "going concern" value of the equipment standing in place at Cap's Tavern. Cap's claims that "deliver" means only that it must allow the trustee to remove the equipment with all costs of removal and renovation falling on the trustee or that it must pay the trustee the distress value of the equipment as it stands in the tavern, with removal and renovation costs falling on the distress purchaser.

The Code gives no hint as to which meaning of the word "deliver" is proper. Since there is no compelling reason why Federal law should override the law of the state, the Georgia law on leases of personal property will be examined with respect to the concept of delivery.

In Georgia the lessee of personal property is termed a bailee for hire. *Southern Bonded Warehouse Co. v. Roadway Express, Inc.*, 104 Ga.App. 458, 122 S.E.2d 147 (1961). "The engagements of the hirer of things are . . . to redeliver at the expiration of the bailment . . ." Ga. Code Ann. § 12–203. Section 12–205 is titled "Duty as to return and delivery." It states:

> "The contract may be for the return of the thing or of like property of the same

kind and quality. In the former case . . . the bailor . . . can retake possession immediately at the expiration of the time of hiring." Ga.Code Ann. § 12–205.

This indicates that the duty of returning the property where the same property is to be returned would fall upon the bailor, here the trustee, in the absence of a contractual provision to the contrary. As the Georgia Court of Appeals has said concerning the termination of a bailment of operating lights in a clinic, "the bailor would be entitled to a reasonable length of time to remove the lights." *Electro-Medical Devices, Inc. v. Urban Medical Service, Inc.*, 140 Ga.App. 776, 778, 232 S.E.2d 106, 108 (1976). Thus in Georgia, the duty of redelivery of a leased item, in the absence of agreement to the contrary, means only a duty to tender possession of the item at the premises of the bailee, in this case, Cap's Tavern. There was clearly no agreement as to redelivery in this case since the facts indicate that the parties intended an eventual sale of the property to Cap's. From this analysis it follows that the cost of removal of the property must fall upon the trustee, since the duty of Cap's is merely to tender possession on its premises.

There remains the problem on whom the cost of restoration and repair should fall. Once again, this Court has found no case precisely on point. However, in *Buhl v. Sandy Springs Medical Center*, 147 Ga.App. 176, 248 S.E.2d 238 (1978), a tenant removed fixtures upon the expiration of a lease. The tenant was held to owe damages for the "cost to repair or restore the building to its condition before the injury." 147 Ga. App. 176, 248 S.E.2d 238. This case is not exactly analogous because apparently the tenant had installed the fixtures in that case. Here, Cap's has installed the fixtures in question. However, it has done so with at least the tacit assent of the debtor. While Mr. Eady, the debtor's President, testified that the lease was "use" only, it is clear that both parties intended that the property be installed in the premises at Cap's Tavern and that it eventually be sold to the defendant. The defendant acted in good faith when it installed the property and has not defaulted upon the lease. This Court finds that the costs of renovation and restoration after removal of the property in question should fall upon the estate. Therefore, the trustee's demand for judgment in the amount of $2,000 is denied.

## ORDER

It is ORDERED and ADJUDGED that the claim of the trustee is superior to any claim of Mrs. Dickman and therefore the trustee may sell the claimed property free and clear of any lien alleged to arise from the interest of Mrs. Dickman.

It is FURTHER ORDERED and ADJUDGED that the security interests of defendant Hulsey, perfected by fixture filings, are superior to the claims of the trustee as to the sinks and updraft units in question and that the trustee must deliver said sinks and updraft units or the proceeds from any sale thereof to defendant Hulsey. The trustee shall sell any other property of the estate free and clear of any liens claimed by defendant Hulsey.

It is FURTHER ORDERED and ADJUDGED that the petition for abandonment of property by defendant Cap's shall be and is denied. Defendant Cap's shall deliver possession of all property of the above-referenced estate to the trustee at the premises of Cap's Tavern with all costs of removal, renovation and restoration after removal to fall upon said estate.

IT IS SO ORDERED.